IN THE CASE OF

UNITED STATES, Appellee

V.

Barry O'CONNOR, Senior Airman
U.S. Air Force, Appellant

No. 01-0403

Crim. App. No. 33671

United States Court of Appeals for the Armed Forces

Argued February 25, 2003

Decided July 9, 2003

ERDMANN, J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., joined. CRAWFORD, C.J., filed a separate dissenting opinion.

Counsel

For Appellant: Major Jefferson B. Brown (argued); Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Kyle R. Jacobson (on brief); Colonel James R. Wise and Lieutenant Colonel Timothy W. Murphy.

For Appellee: Captain C. Taylor Smith (argued); Lieutenant Colonel Lance B. Sigmon and Lieutenant Colonel LeEllen Coacher (on brief); Major Linette I. Romer.

Amicus Curiae: Nita Farahany (law student)(argued); James Coleman, Esq. (supervising attorney), and Randall Cook (law student)(on brief) - For the Duke University School of Law.

Military Judge: Bruce T. Brown

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge ERDMANN delivered the opinion of the Court.

Appellant, Senior Airman Barry O'Connor, United States Air Force, was tried by general court-martial at Hurlburt Field, Florida. Pursuant to his pleas, he was convicted of two specifications of forcible sodomy of a female under 16 years of age and four specifications of indecent acts or indecent liberties with the same victim, in violation of Articles 125 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 925 and 934 (2000). Also pursuant to his pleas, he was convicted of one specification of obstructing justice and two specifications of receiving and possessing child pornography, all violations of Article 134.

The military judge sentenced Appellant to a dishonorable discharge, sixteen years' confinement and reduction to E-1. Consistent with a pretrial agreement, the convening authority reduced the confinement to twelve years and approved the balance of the sentence. On January 25, 2001, the Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

On July 19, 2001, we granted Appellant's petition for review on the following issue:

> WHETHER APPELLANT'S CONVICTIONS UNDER SPECIFICATIONS 2 AND 3 OF ADDITIONAL CHARGE II MUST BE SET ASIDE BECAUSE THE DEFINITIONS OF CHILD PORNOGRAPHY USED TO SUPPORT THOSE CONVICTIONS ARE UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

On September 6, 2001, we issued an order summarily affirming Appellant's conviction and sentence in light of our decision in United States v. James, 55 M.J. 297 (C.A.A.F. 2001). In James, we upheld the constitutionality of the definition of child

pornography upon which Appellant's conviction was based, a view consistent with the majority of other federal courts of appeals that had considered the issue. 55 M.J. at 299.

Appellant then sought review of his child pornography conviction by the Supreme Court. On April 22, 2002, the Supreme Court granted Appellant's petition for writ of certiorari, vacated our earlier judgment and remanded it to us for further consideration in light of its decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).

This matter is before us again because the Supreme Court determined that certain portions of the federal statute underlying Appellant's conviction are unconstitutional. On August 20, 2002, we ordered the parties to submit supplemental briefs on the following issue:[1]

> WHETHER THE FINDINGS OF GUILTY OF SPECIFICATIONS 2 AND 3 OF ADDITIONAL CHARGE II CAN BE AFFIRMED IN LIGHT OF ASHCROFT V. FREE SPEECH COALITION.

For the reasons set forth below, we set aside the findings of guilty to Specifications 2 and 3 of Additional Charge II and remand Appellant's case for appropriate action.

BACKGROUND

In connection with their investigation of the other charges in this matter, agents of the Air Force Office of Special Investigations secured various items of computer media belonging to Appellant. Analysis by the Department of Defense Forensic Laboratory disclosed over 6,500 files of suspected child

---

[1] Argument was heard in this case at the Duke University School of Law, Durham, North Carolina, as part of this Court's Project Outreach. See United States v. Mahoney, __ M.J. __, __ n.1 (2003).

pornographic images contained on that media, many of which were duplicates.

Further analysis of the computer media disclosed numerous instances where Appellant's computer had downloaded suspected child pornographic images from the Internet and several instances where it had posted such images to the Internet. Appellant explained that he had taken certain steps to set up a file exchange structure through the Internet that allowed his computer to receive and download the images. Samples of the images (approximately fifty-nine) were admitted into evidence in accordance with Appellant's stipulation of fact. Appellant's receipt and possession of the images described above formed the basis for his conviction under specifications 2 and 3 of Additional Charge II, which alleges a violation of Article 134.

Conduct is punishable under Article 134 if it prejudices "good order and discipline in the armed forces" [clause 1], if it is "of a nature to bring discredit upon the armed forces" [clause 2], or if it is a crime or offense not capital [clause 3]. The three clauses do not create separate offenses, but rather provide alternative ways of proving the criminal nature of the charged misconduct. United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F. 2002).

In this case, Appellant's possession and receipt of child pornographic images was charged as a "clause 3" offense under Article 134, with the "crime or offense not capital" being a violation of the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2251-2260 (2000). In other words, it was the

alleged violation of that federal law that gave rise to the Article 134 charge.

The CPPA prohibits, inter alia, the knowing receipt and knowing possession of child pornography that has been transported in interstate or foreign commerce, including by computer. See 18 U.S.C. §§ 2252A(a)(2)(A), (a)(5)(B). The term "child pornography" for purposes of those offenses is defined in 18 U.S.C. § 2256(8) as follows:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where --
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or
> (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

In Free Speech Coalition, the Supreme Court determined that certain portions of the § 2256(8) definition are unconstitutional, specifically the "or appears to be" language of § 2256(8)(B), and the entirety of § 2256(8)(D). 535 U.S. at 256, 258.[2] In striking the former, the Court specifically discussed the distinction between "virtual" child pornography and "actual" pornography and concluded that the rationales for restricting

---

[2] The Supreme Court did not consider the 18 U.S.C. § 2256(8)(C) (2000) definition, which it described as "computer morphing" -- a process where innocent pictures of real children are altered so that the children appear to be engaged in sexual activity. This form of "child pornography" remains subject to criminal sanction. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 242 (2002).

pornographic materials involving actual children do not extend to computer-generated simulations or images.  Id. at 249-56.

The Supreme Court concluded that the First Amendment prohibits any prosecution under the CPPA based on "virtual" child pornography.  We must now determine whether Appellant's conviction for possessing and receiving child pornography can be sustained in light of that ruling.

### DISCUSSION

A.   The Providence of Appellant's Plea under Article 134, Clause 3.

Appellant's conviction is based on his plea of guilty to violating those portions of the CPPA prohibiting the knowing receipt and possession of child pornography that has been transported in interstate or foreign commerce, including by computer.  See 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B).  For us to set aside a finding based upon a guilty plea on appellate review, the record of trial must show a substantial basis in law and fact for questioning the guilty plea.  United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).  The inquiry, then, is whether the Supreme Court's decision in Free Speech Coalition creates a substantial basis in law and fact for questioning Appellant's plea.  We conclude that it does.

For a guilty plea to be provident, the accused must be convinced of, and be able to describe, all of the facts necessary to establish guilt.  Rule for Courts-Martial 910(e) discussion.  In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit "factual circumstances as

6

revealed by the accused himself [that] objectively support that plea[.]" Jordan, 57 M.J. at 238 (quoting United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996)).

Prior to Free Speech Coalition, knowing possession and receipt of images of child pornography, virtual or actual, was sufficient to establish one of the factual predicates for a plea of guilty under the CPPA. The "virtual" or "actual" character of the images was not, in and of itself, a factual predicate to a guilty plea -- criminal liability could arise under either circumstance.

It is no longer enough, however, to knowingly possess, receive or distribute visual depictions that "appear to be" of a minor engaging in sexually explicit conduct. In the wake of Free Speech Coalition, the relevant provisions of 18 U.S.C. § 2256(8) require that the visual depiction be of an actual minor engaging in sexually explicit conduct. The "actual" character of the visual depictions is now a factual predicate to any plea of guilty under the CPPA.

In order to find Appellant's plea provident, his plea inquiry and the balance of the record must objectively support the existence of this factual predicate. We conclude that they do not. During his providence inquiry, the military judge utilized the pre-Free Speech Coalition provisions of 18 U.S.C. § 2256(8) to explain the definition of "child pornography" to Appellant. When asked after that explanation to describe why he believed the materials at issue were "child pornography," Appellant indicated that "the occupants in the pictures appeared to be under the age of 18." (Emphasis added.) It was against

that backdrop that Appellant made his subsequent acknowledgements and admissions concerning his possession and receipt of "child pornography."

The military judge's use of the pre-Free Speech Coalition definition of "child pornography" properly reflected the law at the time of trial. His failure to inquire into the "actual" versus "virtual" distinction was perfectly understandable --it had no factual significance to the offenses under the law as it stood at that time. As outlined above, however, it now has critical significance. Through no fault of the military judge or the parties, the record before us contains no discussion or acknowledgement on the part of Appellant (or anyone) concerning the now-critical distinction between actual and virtual images.

In James, we held that the CPPA definitions were constitutional but acknowledged in dicta that, even if the CPPA were narrowly construed to exclude "virtual" images, the record and providence inquiry in that particular case "'objectively support[ed]' appellant's guilty pleas to possessing and transporting child pornography depicting actual minors." 55 M.J. at 301. Our analysis of this issue, however, is now shaped by the landscape created by the Supreme Court in Free Speech Coalition. The most prominent feature of that landscape is the distinction between "actual" and "virtual" images, and it is unclear from the providence inquiry and record here whether Appellant was pleading guilty to possession of virtual or actual child pornography.

Congress has recently taken action in response to the Supreme Court's decision in Free Speech Coalition by including a

8

category of "virtually indistinguishable" images in the CPPA definitions. See Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 502, 117 Stat. 650, 678-679 (2003).[3] The effect and constitutionality of that recent action remain to be assessed in future cases.

For present purposes, however, a provident guilty plea to a violation of the CPPA provisions at issue here must reflect that an accused has violated those portions of the statute upheld by the Supreme Court. In light of that, and in the absence of any discussion or focus in the record before us regarding the "actual" character of the images, we cannot view Appellant's plea of guilty to violations of the CPPA as provident.

B.    The Providence of Appellant's Plea under Article 134, Clause 2.

Our determination that Appellant's plea is improvident as to a violation of the CPPA does not end our inquiry. We have recognized in the past that an improvident plea to a CPPA-based clause 3 offense under Article 134 may be upheld as a provident plea to a lesser-included offense under clause 2 of Article 134. See e.g., United States v. Augustine, 53 M.J. 95 (C.A.A.F. 2000); Sapp, 53 M.J. at 92.

As in this case, the guilty pleas in Sapp and Augustine were entered to a violation of Article 134, clause 3, based on

---

[3] That action was motivated by Congress' recognition of the practical consequences flowing from the distinction drawn by the Supreme Court. Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 501, 117 Stat. 676-678 (congressional findings regarding state of technology and difficulty in distinguishing virtual from actual images).

possession of child pornography in violation of the CPPA. As in this case, the guilty pleas were found to be improvident as to the clause 3 offense in light of certain requirements under the CPPA that were not established in the record. In those cases, however, we concluded that the guilty pleas were provident as to the lesser-included offense of engaging in "conduct of a nature to bring discredit upon the armed forces" under clause 2 and upheld the convictions under Article 134. Augustine, 53 M.J. at 96; Sapp, 53 M.J. at 92.

The question before this Court is whether that same conclusion can be reached here. For the reasons outlined below, we conclude that it cannot. Both Sapp and Augustine involved discussions between the accused and the military judge during the providence inquiry concerning the service-discrediting character of their actions in possessing images of child pornography. Sapp, 53 M.J. at 91 (accused admitted during providence inquiry that possession of images constituted service-discrediting conduct); Augustine, 53 M.J. at 96 (accused admitted during providence inquiry that his conduct "was of a nature to bring discredit upon the armed forces).

Although Appellant stipulated to the service-discrediting character of his conduct in the present case there was no discussion of that element by either Appellant or the military judge during his plea inquiry. It is the absence of any discussion of the service-discrediting character of Appellant's conduct during the providence inquiry coupled with the impact of the Supreme Court's decision in Free Speech Coalition that gives us pause. The Supreme Court has now extended a cloak of First

10

Amendment protection to certain depictions of minors engaging in sexually explicit conduct. Accordingly, the question of whether or not the possession of such visual depictions can be viewed as service discrediting now has a constitutional dimension that was not at issue in Sapp or Augustine.

Essential to our holding in Sapp was the recognition that the providence inquiry there demonstrated that the accused "clearly understood the nature of the prohibited conduct." 53 M.J. at 92. In the wake of Free Speech Coalition, the "virtual" or "actual" status of the images at issue has constitutional significance. That constitutional significance may, in turn, bear on "the nature of the prohibited conduct", i.e., its service-discrediting character.

Appellant's plea inquiry was focused on the question of whether or not his conduct violated the CPPA, not the question of whether or not, under the circumstances, his conduct was of a nature to bring discredit upon the armed forces. As such, there was no specific discussion with Appellant concerning the service-discrediting character of his conduct, much less any constitutional implications his conduct may or may not have had. In the absence of any conscious discussion regarding those issues, the record here does not demonstrate that Appellant "clearly understood the nature of the prohibited conduct." See id. Accordingly, we cannot view Appellant's plea as provident to the lesser-included offense of service-discrediting conduct under clause 2 of Article 134.

That same absence of focus in the record also prevents us from engaging in any broad inquiry concerning the degree to which

the First Amendment protections extended to virtual images by the Supreme Court carry over into the realm of military justice. Accordingly, we do not address the question of whether, in the wake of Free Speech Coalition, the possession, receipt or distribution of images of minors engaging in sexually explicit conduct (regardless of their status as "actual" or "virtual") can constitute conduct of a nature to bring discredit upon the armed forces for purposes of clause 2 of Article 134.

We have long recognized that the First Amendment rights of civilians and members of the armed forces are not necessarily coextensive. United States v. Brown, 45 M.J. 389, 396 (C.A.A.F. 1996). At the same time, however, we must ensure that the connection between any conduct protected by the First Amendment and its effect in the military environment be closely examined. Id. The absence of any discussion in Appellant's plea inquiry or any other record development concerning the service-discrediting character of his conduct precludes us from engaging in that "close examination" in the present case.

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is reversed as to Specifications 2 and 3 of Additional Charge II and as to sentence, but is affirmed in all other respects. The findings of guilty of Specifications 2 and 3 of Additional Charge II and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals. That court may either dismiss Specifications 2 and 3 of Additional

12

Charge II and reassess the sentence, or it may order a rehearing. Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2000) will apply.

United States v. O'Connor, No. 01-0403/AF

CRAWFORD, Chief Judge (dissenting):

I would affirm the decision of the court below on several grounds. First, Appellant waived the issue by failing to challenge the constitutionality of the statute at trial. Second, the factual circumstances of the record objectively support Appellant's guilty plea to possessing and transporting child pornography depicting <u>actual</u> minors. Moreover, Appellant's guilty plea to Additional Charge II, Specifications 2 and 3, was provident to the lesser-included offense of conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces. For these reasons, I respectfully dissent.

A. <u>Appellant Waived the Issue</u>.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." <u>United States v. Mezzanatto</u>, 513 U.S. 197, 201 (1995). In fact, "[t]hat constitutional questions which are nonjurisdictional must be asserted at trial to preserve them for appeal is a well settled doctrine[.]" <u>United States v. Hoskins</u>, 406 F.2d 72, 74 (7th Cir. 1969)(citing <u>Head v. New Mexico Board</u>, 374 U.S. 424, 432 n.12 (1963); <u>Glidden Co. v. Zdanok</u>, 370 U.S. 530 (1962); <u>Wong Tai v. United States</u>, 273 U.S. 77 (1927); <u>Cox v. City of Freeman</u>, 321 F.2d 887 (8th Cir. 1963); <u>Werner v. Hearst Publishing Co.</u>, 297 F.2d 145 (9th Cir. 1961); <u>Rubin v.</u>

<u>United States</u>, 289 F.2d 195 (5th Cir. 1961); <u>Evangelical Lutheran Church v. Stanolind Oil & Gas Co.</u>, 251 F.2d 412 (8th Cir. 1958); <u>Keyes v. Madsen</u>, 179 F.2d 40 (D.C. Cir. 1949), <u>cert. denied</u>, 339 U.S. 928 (1950); <u>Wabash Ry. Co. v. City of St. Louis</u>, 64 F.2d 921 (8th Cir. 1933)).  Moreover, "[t]he rule is well established and of long standing that an exception [to a charge], to be of any avail, must be taken at the trial." <u>Johnson v. Garber</u>, 73 F. 523, 526 (6th Cir. 1896)(quoting <u>United States v. Carey</u>, 110 U.S. 51, 52 (1884)).

When Appellant learned of his charge under Article 134, clause [3], for violating the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2252A (2000), he neither took exception to the charge generally, nor alleged that the basis for the charge -- the CPPA -- was unconstitutionally vague and overbroad.  In so doing, Appellant cannot now be afforded relief on the very grounds he himself failed to raise, and therefore waived.

B. <u>The Record Supports Appellant's Guilty Plea to Possessing and Transporting Child Pornography Depicting Actual Minors</u>.

Even if waiver is not applicable, Appellant's guilty plea was provident to violating the CPPA, as interpreted by the Supreme Court in <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002).

In <u>Free Speech Coalition</u>, the Court in effect held that to violate the CPPA, one must knowingly receive and possess child

2

pornography, transported in interstate or foreign commerce, where such pornography is comprised of visual depictions of <u>actual</u> minors. Thus, the accused's knowledge that the pornography involves actual minors is an element of the offense that must be established. In a contested case, the Government must demonstrate this knowledge beyond a reasonable doubt to prove the accused committed the crime. In a non-contested case, such as this one, the court must only verify this knowledge to sustain the providence of the guilty plea.

When evaluating the providence of a guilty plea, "[r]ather than focusing on a technical listing of the elements of an offense, this Court looks at the context of the entire record to determine whether an accused is aware of the elements, <u>either explicitly or inferentially</u>." <u>United States v. Redlinski</u>, 58 M.J. 117, 119 (C.A.A.F. 2002)(emphasis added). "[T]here need only be 'factual circumstances' on the record 'which "objectively" support' the guilty pleas, i.e., that actual minors were in appellant's pictures." <u>United States v. James</u>, 55 M.J. 297, 300 (C.A.A.F. 2001)(quoting <u>United States v. Shearer</u>, 44 M.J. 330, 334 (C.A.A.F. 1996)).

In <u>James</u>, this Court considered the following colloquy in evaluating the providence of the appellant's guilty plea to violating the pre-<u>Free Speech Coalition</u> CPPA:

Q. The term "child pornography" [under the CPPA] means any visual depiction . . . involv[ing] the use of a minor engaging in sexual [sic] explicit conduct.  Such visual depiction is or appears to be of a minor engaging in sexually explicit conduct[.]

. . . .

Q. Now, why do you believe that - as far as describes those files - why you believe the files to be described as child pornography?

A. Well, they depicted young females under the age of eighteen, which as you stated, that they, uh, they are minors. I believe that the pictures depicted minors under the age of eighteen and at least four contained minors engaged in sexual activity.

. . . .

Q. Do you believe that one of those persons involved in that conduct was a minor?

A. I believe the person in the picture was under eighteen, yes, sir.

55 M.J. at 299, 301 (emphasis added).  The Court noted that through these words, the appellant "admitted that actual minors were in the charged pictures" and that these admissions were "amply supported by the pictures themselves."  Id. at 300-01.  The Court then concluded that "the factual circumstances reflected in the record 'objectively support' [the] appellant's guilty pleas to possessing and transporting child pornography depicting actual minors."  Id. at 301 (emphasis added).  In short, although the appellant did not supply the adjectives "real" or "actual," and although the judge defined "pornography" in pre-Free Speech Coalition terms, this Court inferred from the

4

language the appellant did use -- "young females" and "minors" -- that the images involved <u>actual</u> minors.  See <u>Redlinski</u>, 58 M.J. at 119 (noting that providence may be confirmed by the record inferentially).

In the present case, when the military judge questioned Appellant regarding the exact act he committed, the following exchange occurred:

> Q. So you did in fact receive child pornography through your computer?
>
> A. Yes, sir, I did.
>
> Q. How did you know that?
>
> A. Some of it was <u>very obvious</u>, Your Honor.
>
> Q. Can you explain how it was very obvious?
>
> A. Young, undeveloped, <u>female children</u>.
>
> Q. How were they depicted?
>
> A. Posing, engaged in sexual acts of intercourse and sodomy.

(Emphasis added.)

The descriptive terminology Appellant used -- that those depicted were "young, undeveloped, female children" -- was very similar to the terminology in <u>James</u>, particularly given the near equivalency in meaning of the words "minor" and "child."  See <u>Black's Law Dictionary</u> 1011 (7th ed. 1999)(defining "minor" as "[a] person who has not reached full legal age; a <u>child</u> or juvenile")(emphasis added).  Moreover, as in <u>James</u>, the pictures

attached to the record in this case amply support Appellant's awareness that the images involved actual minors.

Finally, the Department of Defense Forensic Laboratory uncovered over 6,500 files of child pornography on Appellant's computer, approximately 59 of which were admitted into evidence. Given the staggering number of files, probability and common sense certainly dictate that among those files were at least three images of actual children. See 18 U.S.C. § 2252A(d) (2000)(noting that liability requires possession of at least three proscribed images). Thus, this Court should infer from the record Appellant's knowledge that at least three of the images were of actual children. See Redlinski, 58 M.J. at 119; United States v. Blocker, 32 M.J. 281, 284 (C.M.A. 1991)(noting that in resolving many questions courts may draw reasonable inferences from the evidence of record).

In short, the factual circumstances of the record objectively support Appellant's guilty plea to possessing and transporting child pornography depicting actual minors.

C. Appellant's Plea was also Provident to the Lesser-Included Offense of Conduct Prejudicial to Good Order and Discipline or of a Nature to Bring Discredit Upon the Armed Forces.

Notwithstanding the providence of Appellant's guilty plea to possessing and transporting child pornography depicting actual minors, in violation of the CPPA, the same plea was

6

provident to the lesser-included offense of conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.

Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000), punishes

[1] all disorders and neglects to the prejudice of good order and discipline in the armed forces, [2] all conduct of a nature to bring discredit upon the armed forces, and [3] crimes and offenses not capital, of which persons subject to this chapter may be guilty[.]

In United States v. Foster, 40 M.J. 140, 143 (C.M.A. 1994), this Court held that each offense charged under the UCMJ "per se is either prejudicial to good order and discipline or brings discredit to the armed forces." Thus, conduct violating any enumerated Article, or Article 134, clause [3], per se also violates Article 134, clause [1] or clause [2]. United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F. 2000). Accordingly, an accused charged under Article 134, clause [3], is on notice that Article 134, clause [1] or clause [2], is a lesser-included offense of the principal clause [3] charge. Id. In short, included within Appellant's charge under Article 134, clause [3], was the lesser-included offense of conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces, under Article 134, clauses [1] and [2]. This Court may therefore affirm so much of the finding as includes this lesser-included offense. Article 59(b), UCMJ, 10 U.S.C.

7

§ 859(b) (2002) ("Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense.").

In evaluating the providence of Appellant's guilty plea to this lesser-included offense, "this Court looks at the context of the entire record to determine whether [Appellant was] aware of the elements, either explicitly or inferentially." Redlinski, 58 M.J. at 119 (emphasis added). Such awareness "may be satisfied by the 'factual statement,' the 'stipulation,' or 'representation' by counsel that the offense was committed." Id. at 120 (Crawford, C.J., dissenting)(quoting Henderson v. Morgan, 426 U.S. 637, 646 (1976))(emphasis added).

Appellant's ten page stipulation of fact contains 33 paragraphs and hyperlinks to each of the 6,508 image files that resulted in Appellant's charge under Article 134. Four times in the stipulation, Appellant acknowledged that knowingly downloading and electronically storing these very images was conduct "to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces." This admission is binding as fact upon the parties and the court-martial, unless and until it is withdrawn or stricken from the record. United States v. Gerlach, 16 C.M.A. 383, 385, 37 C.M.R. 3, 5 (1966); Rule for Courts-Martial

811(e). In short, Appellant's explicit admissions, coupled with the detailed descriptions and hyperlink references, objectively support his guilty plea to the lesser-included offense of conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.

The majority is troubled by "the absence of any discussion of the service-discrediting character of Appellant's conduct during the providence inquiry coupled with the impact of the Supreme Court's decision in Free Speech Coalition[.]" __ M.J. at (10). While these factors initially gave me pause as well, after much reflection, I am even more convinced of the providence of Appellant's guilty plea to the lesser-included offense.

First, because Appellant stipulated that his conduct was prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces, and because the court-martial is bound by that stipulation, the lack of a discussion during the providence inquiry of the prejudicial and service-discrediting character of Appellant's conduct does not preclude a finding that the plea was provident. The stipulation alone, which was neither withdrawn nor stricken from the record, left no doubt that Appellant fully and intelligently understood his conduct to be prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces. See Henderson

9

v. Morgan, 426 U.S. at 646 (acknowledging that a stipulation "can serve as a substitute for either a finding after trial, or a voluntary admission, that [an appellant] had the requisite [mental state]").

Moreover, the Supreme Court's decision in Free Speech Coalition impacts only the providence of Appellant's plea to the violation of Article 134, clause [3], which refers to Appellant's violation of the CPPA.  The providence of Appellant's admission to violating the CPPA is distinct from the providence of his admission to conduct prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces.  Certainly, knowing possession of images such as those that formed the basis of Appellant's conviction -- whether the minors depicted in the images are actual minors or merely "virtual" minors -- is to the prejudice of good order and discipline, as well as service-discrediting.  See Manual for Courts-Martial, United States (2002 ed.) Part IV, para. 60.c.(2) - (3).  Thus, notwithstanding Free Speech Coalition, Appellant's plea remains provident for the lesser-included offense of conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.  As evidenced by the stipulation, Appellant clearly understood that what he did was prejudicial to good order and discipline, as well as service-

10

discrediting, regardless of whether he clearly understood that the images were of actual children.

In sum, Appellant's plea supports the charge and specification of possessing and transporting child pornography depicting actual minors.  Moreover, the plea supports at least a finding of guilty as to the lesser-included offense.

For these reasons, I respectfully dissent from the majority opinion.