Judge ERDMANN
delivered the opinion of the court.[1]
Sergeant Marc R. Reeves was convicted of violating certain provisions of the Child Pornography Prevention Act of 1996 (CPPA),[2] charged as a “crime or offense not capital” under the third clause of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). This is the same statute we addressed in United States v. O’Connor, 58 M.J. 450 (C.A.A.F.2003), and more recently United States v. Martinelli, 62 M.J. 52 (C.A.A.F.2005). As in Martinelli, the conduct underlying Reeves’ convictions occurred in Germany. We granted review of this ease to examine the extraterritorial application of the CPPA and the effect of that issue on the underlying charges in this case.
In Martinelli we considered whether the CPPA had extraterritorial application and concluded that it did not. Consistent with Martinelli, we hold that the three sections of the CPPA under which Reeves was charged do not extend to his conduct in Germany. We further hold that none of Reeves’ conduct in Germany continued into the United States. Thus, none of Reeves’ conduct falls within the domestic application of the CPPA. We also hold that Reeves’ guilty pleas to the *90 CPPA-based Article 134, clause 3 specifications cannot be deemed provident as to lesser included offenses under either Article 134, clauses 1 or 2.

PROCEDURAL BACKGROUND

Reeves entered guilty pleas and was convicted by a general court-martial in April and May of 2001 of violating a lawful general regulation in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2000), and possessing child pornography, receiving child pornography, and using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of the CPPA as a “crime or offense not capital” under clause 3 of Article 134, UCMJ.
Reeves was sentenced to a dishonorable discharge, confinement for fifty-six months, forfeiture of $250.00 pay per month for twelve months, reduction to pay grade E-l, and a reprimand. Pursuant to a pretrial agreement, the convening authority reduced the confinement to thirty-six months and approved the balance of the sentence. The United States Army Court of Criminal Appeals affirmed the findings but deleted a portion of the reprimand[3] and affirmed the remaining sentence. We granted review to determine whether Reeves’ conviction of possessing, receiving, and producing child pornography, charged under clause 3 of Article 134, could be upheld in light of Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).[4] We specified five additional issues addressing whether the CPPA had extraterritorial application.[5]

FACTUAL BACKGROUND

A. Specifications 1 and 2: Receiving and Possessing Child Pornography
Sergeant Reeves was assigned to the 502d Engineer Company of the 565th Engineer *91 Battálion located at Pioneer Kaserne, a United States Army installation, in Hanau, Germany. He resided with his family at New Argonner Kaserne, another U.S. Army installation in Hanau. On a number of occasions from March to December 2000, Reeves went to the public library at Pioneer Kaserne and used the library computers to sign on to the Internet.
Once on the Internet, Reeves would enter “teen” chat rooms where he would communicate with individuals who indicated they were twelve to fifteen years old. Reeves received e-mail that contained digital images, including images of minors “in a state of nudity involving a lewd exhibition or graphic focus on a minor’s genitals.” Reeves also belonged to “e-mail distribution groups” from which he automatically received child pornography. Reeves would download and view these images on the library computers and print them out on the library printers. After his conduct was discovered and reported to law enforcement, various printed images containing child pornography were found in Reeves’ vehicle and in his quarters.
Based upon these facts, Reeves was charged with the following violations of the CPPA under clause 3 of Article 134:
Specification 1: ... at or near Hanau, Germany, on land used by and under the control of the United States Government, to wit: New Argonner Kaserne, between on or about 01 March 2000 and 05 December 2000, knowingly and wrongfully possessed] about 46 computer printouts containing child pornography in violation of Title 18 U.S.Code § 2252A(a)(5)(A).
Specification 2: ... at or near Hanau, Germany, between on or about 01 March 2000 and 05 December 2000, knowingly and wrongfully receive[d] child pornography that had been transported in interstate commerce or foreign commerce by means of a computer to wit: downloading electronic files containing child pornography from the internet and copying said files onto the hard drive of a computer located at the Pioneer Library in Hanau, Germany in violation of 18 U.S. [Code] § 2252A(a)(2).
B. Specification 3: Producing a visual depiction of a minor engaged in sexually explicit conduct
The facts underlying this offense occurred in the summer of 2000 when Reeves used a camcorder to videotape “two little German girls” near the Main River in Hanau, Germany. (PE 1). From a distance of about 200 feet, Reeves filmed the girls, focusing in on their “genital areas”, and focusing in particular on one of the girls “in a way to see into the little girl’s shorts” and intending “to satisfy [his] lust.”
Based upon these facts, Reeves was charged with the following violation of the CPPA under clause 3 of Article 134:
Specification 3: at or near Hanau, Germany, on or about between May 2000 and August 2000, use[d] a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct using material that had been mailed, shipped or transported in interstate commerce or foreign commerce in violation of 18 U.S. [Code] § 2251(a).

DISCUSSION

A. Standard of Review
This case involves a guilty plea. For this court to reject a guilty plea on appellate review, the record of trial must show a substantial basis in law and fact for questioning the plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)). Whether Congress intended 18 U.S.C. §§ 2251(a) and 2252A(a)(2) and (a)(5)(A) to have extraterritorial application is a question of statutory interpretation. Interpretation of a statute and its legislative history are questions of law that we review de novo. United States v. Falk, 50 M.J. 385, 390 (C.A.A.F. 1999); Martinelli, 62 M.J. at 56.
B. The Nature of the Charge under Article 131
Reeves’ possession, receipt and production of child pornography were charged as violations of Article 134, UCMJ — the *92 “General Article.” Conduct is punishable under Article 134 if it prejudices “good order and discipline in the armed forces” (clause 1), if it is “of a nature to bring discredit upon the armed forces” (clause 2), or if it is “a crime or offense not capital” (clause 3). O’Connor, 58 M.J. at 452; Martinelli, 62 M.J. at 56. As was the case in both O’Connor and Martinelli, Reeves’ offenses under Article 134 were specifically charged as “clause 3” offenses, with 18 U.S.C. §§ 2251(a) and 2252A(a)(2) and (a)(5)(A) serving as the “crimes or offenses not capital.”
As in Martinelli, the principal issue that we specified for review is whether the CPPA applies to Reeves’ conduct in Germany. If we find that the CPPA is not applicable to Reeves’ conduct in Germany, we must then consider whether, due to the nature of his usage of the Internet, his conduct fell within the domestic application of the CPPA. Finally, if we find that Reeves’ pleas were improvident under clause 3 of Article 134, we must determine whether they would be provident to a lesser included offense under clause 1 or 2 Article 134.
C. The Extraterritorial Application of the CPPA
(1) Extraterritorial Application of § 2252A
In Martinelli this court determined that § 2252A did not apply extraterritorially to Martinelli’s conduct in Germany. Under the rationale of United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922) and Equal Employment Opportunity Commission v. Arabian American Oil Co. (Aramco), 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), we concluded that the CPPA is subject to a presumption against extraterritoriality and that there was nothing in the language of the statute or the legislative history to overcome this presumption. Martinelli, 62 M.J. at 62-63. As a result there was a substantial basis on which to question the providence of Martinelli’s guilty plea to the CPPA-based clause 3 offenses resulting from conduct occurring in Germany.
Reeves’ receipt and possession of child pornography — charged under § 2252A — also occurred in Germany and in that respect this ease is indistinguishable from Martinelli. Therefore, consistent with our holding in Martinelli, we find that § 2252A does not have extraterritorial application and is inapplicable to Reeves’ conduct in Germany.
(2) Extraterritorial Application of § 2251(a)
Unlike Martinelli, Reeves was also charged with producing a visual depiction of sexually explicit conduct by a minor in violation of § 2251(a). We have not previously considered the question of the extraterritorial application of § 2251(a).[6]
As with § 2252A, we begin with a presumption against extraterritoriality. The Supreme Court has recognized as a longstanding principle of American law “that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.” Aramco, 499 U.S. at 248, 111 S.Ct. 1227 (quoting Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)). As we stated in Martinelli, we must assume that Congress legislates against the backdrop of this presumption. Martinelli, 62 M.J. at 56-57. Moreover, offenses created by the CPPA do not fall within the Bowman exception to the presumption against extraterritoriality. Id. at 57-58 (citing United States v. Bowman, 260 U.S. at 97-98, 43 S.Ct. 39, for the proposition that certain “criminal statutes which are, as a class, ... enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated” are not accorded a presumption of extraterritoriality). We look next “to see whether ‘language in the [relevant statute] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States *93 has sovereignty or some measure of legislative control.’ ” Aramco, 499 U.S. at 248, 111 S.Ct. 1227 (quoting Foley Bros., 336 U.S. at 285, 69 S.Ct. 575); see also Small v. United States, 544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005). To answer this question we look at the text of the statute, its structure and its legislative history. Martinelli, 62 M. J. at 58-59.
(a) Text and Structure
As in Martinelli, the statutory section in question includes references to “interstate and foreign commerce.” This language is “not, in and of [itself], a ‘clear expression’ of any congressional intention that the acts proscribed by the statute constitute a federal crime no matter where in the world they occur.” Id. at 60. As in Martinelli, we decline to find congressional intent for extraterritorial application based solely on the use of the words “interstate and foreign commerce.”[7]
In addition, Congress’ intent to limit the reach of § 2251(a) is made more clear by reference to § 2260. In 1994, Congress adopted § 2260, which specifically targets “[a] person who, outside the United States, employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct____” Emphasis supplied. In other words, there is another statutory section that addresses all of the same acts when such acts are committed outside of the United States with the intent that the materials be sent into the United States. If Congress intended § 2251(a) to apply extraterritorially, there would have been no need for § 2260 because such behavior would already have been criminalized regardless of whether the accused intended to import the visual depictions into the United States.
(b) Legislative History
Having concluded that the text and structure of § 2251(a) do not express any clear intent by Congress that the statute apply extraterritorially, we turn to its legislative history. We conclude that it too gives no indication that Congress intended § 2251(a) to apply extraterritorially. The clear focus of that legislative history is on the patent evils of child pornography and the concern that “child pornography and child prostitution have become highly organized multimillion dollar industries that operate on a nationwide scale.” S.Rep. No. 95-438, at 5 (1977). Although the history of § 2251(a) contains extensive discussion of the nationwide problem of child pornography, it does not discuss issues of extraterritoriality, much less include any clear expression of congressional intent in that regard.
D. The Domestic Application of the CPPA
In Martinelli, we also considered whether any of Martinellfis conduct could be characterized as domestic conduct as he had stipulated that all of the e-mails that he sent or received were routed through servers in the United States. 62 M.J. at 62-63. We concluded in that case that the act of “sending” e-mails containing child pornography was a “continuing offense” because Martinelli's conduct continued as the e-mail traveled through the Internet to its destination. Id. at 63-64. Because the e-mails in Martinelli traveled through the United States en route to their *94 destination, we found that the sending offense occurred in both Germany and the United States and therefore the CPPA applied domestically to that specification. Id.
We went on to conclude that other specifications, which charged Martinelli with “receiving child pornography” and “reproducing child pornography for distribution”, were not “continuing offenses” as they did not involve any conduct that started in Germany and continued into the United States. Therefore, there was no domestic application of the CPPA available for those offenses. Here, as in Martinelli, each specification alleges different conduct and each must be examined individually.
Specification 1 (possession): This specification charged Reeves with violating 18 U.S.C. § 2252A(a)(5)(A) by possessing child pornography on land used by and under the control of the United States Government. This specification is a “situs” based possession charge and does not allege movement of child pornography through the Internet. The principle of “continuing jurisdiction” is therefore inapplicable to this specification and there is no basis for finding a domestic application of the CPPA.
Specification 2 (receiving): This specification charged Reeves with violating 18 U.S.C. § 2252A(a)(2) by receiving child pornography that had been transported through the Internet. Reeves admitted during his providence inquiry that the images were “sent from the U.S. through the Internet to me.” Had Reeves been charged with “sending” e-mails containing child pornography through the Internet, the principle of a “continuing offense” may have established domestic U.S. application of the CPPA. However, Reeves was charged with “receiving”[8] e-mails containing child pornography. Here, Reeves did not knowingly receive the images until he accessed the pictures in Germany and the act of opening the images did not trigger a chain of events that continued into the United States. His conduct therefore can not be subject to a domestic U.S. application of the CPPA. Martinelli, 62 M.J. at 64.[9]
Specification 3 (production): This specification charged Reeves with violating 18 U.S.C. § 2251(a) by using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Although Reeves admitted that the camcorder he used to videotape the German girls had been manufactured in Japan, purchased in the United States and transported by him to Germany, in videotaping the girls he did not begin any conduct that continued into the United States. His conduct occurred entirely in Germany and there can be no domestic application of the CPPA. Martinelli, 62 M.J. at 63-64.
In summary, none of acts identified in the specifications in Charge II constitute a “continuing offense” and therefore there can be no domestic application of the CPPA in this case.
E. The Possibility of Lesser Included Offenses
The conclusion that Reeves’ guilty pleas are not provident under clause 3 of Article 134 does not end our inquiry. We have recognized in the past that an improvident plea to a CPPA-based clause 3 offense *95 may, under certain circumstances, be upheld as a provident plea to a lesser included offense under clause 2 of Article 134. See, e.g., United States v. Augustine, 53 M.J. 95 (C.A.A.F.2000); United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F.2000); O’Connor, 58 M.J. at 454-55; United States v. Mason, 60 M.J. 15, 20 (C.A.A.F.2004); Martinelli, 62 M.J. at 66. The question is whether those circumstances are present in Reeves’ case.
Augustine and Sapp were two pre-Free Speech Coalition[10] cases where:
the guilty pleas ... were entered to a violation of Article 134, clause 3, based on possession of child pornography in violation of the CPPA. As in this case, the guilty pleas were found to be improvident as to the clause 3 offense in light of certain requirements under the CPPA that were not established in the record. In those cases, however, we concluded that the guilty pleas were provident as to the lesser-included offense of engaging in “conduct of a nature to bring discredit upon the armed forces” under clause 2 and upheld the convictions under Article 134. Augustine, 53 M.J. at 96; Sapp, 53 M.J. at 92.
O’Connor, 58 M.J. at 454. Sapp and Augustine dealt with the possibility of a lesser included offense under clause 2 of Article 134 where a guilty plea to a CPPA-based clause 3 Article 134 charge was found improvident. In those cases, where no constitutional considerations were involved, we found the pleas provident to a violation of clause 2 of Article 134.
After the Free Speech Coalition decision, we explained in O’Connor, Mason and Martinelli that where the constitutional rights of a servieemember could come into play, we will apply closer scrutiny to the providence inquiry before upholding a plea as provident to a lesser included offense under clause 1 or 2 of Article 134. See O’Connor, 58 M.J. at 454-55; Mason, 60 M.J. at 19; Martinelli, 62 M.J. at 66-67. The difference between our review of a providence inquiry under the O’Connor/Mason/Martinelli standard and our review under the less strict Augustine! Sapp standard is a qualitative difference. “Although the understanding required of the servieemember remains the same, we require a clearer more precise articulation of the servicemember’s understanding under O’Connor than we require in eases where the accused’s First Amendment rights are not implicated.” Martinelli, 62 M.J. at 66-67.
During Reeves’ providence inquiry the military judge defined the term “child pornography” for purposes of Specifications 1 and 2 without utilizing the language determined to be unconstitutional by the Supreme Court in Free Speech Coalition.[11] Specification 3 charged a violation of 18 U.S.C. § 2251(a) which does not contain the term “child pornography”.[12] With no constitutional dimension at play in the providence inquiry, our analysis into the possibility of a lesser included offense is governed by the principles embodied in Augustine and Sapp rather than O’Connor, Mason, or Martinelli.
Nevertheless, the providence inquiry must reflect that the accused “clearly understood the nature of the prohibited conduct.” Sapp, 53 M.J. at 92. In both Augustine and Sapp the accused admitted the service discrediting *96 character of his conduct during the plea inquiry and we characterized those discussions as demonstrating that the accused “clearly understood the nature of the prohibited conduct.” Augustine, 53 M.J. at 96; Sapp, 53 M.J. at 92.
In this case, however, there is an absence of any inquiry or discussion of service discrediting conduct or conduct that is prejudicial to good order and discipline. The military judge did not list service discrediting conduct or conduct that is prejudicial to good order and discipline as an element of any of the child pornography offenses. The plea inquiry focused entirely on the elements of the clause 3 offenses. Thus, the providence inquiry simply does not provide a sufficient basis for determining that Reeves’ pleas are provident to the lesser included offenses of conduct that is service discrediting or prejudicial to good order and discipline under clause 1 or 2 of Article 134.

DECISION

The decision of the United States Army Court of Criminal Appeals as to Charge II and its specifications and the sentence is reversed, but is affirmed in all other respects. The findings of guilty to Charge II and its specifications and the sentence are set aside and the record of trial is returned to the Judge Advocate General of the Army for a rehearing on Charge II and its specifications and the sentence.[13] If a rehearing on Charge II and its specifications is deemed impracticable, that charge and those specifications may be dismissed and a rehearing held on the sentence alone. Thereafter, the provisions of Articles 66(b) and 67(a), UCMJ, 10 U.S.C. §§ 866(b), 867(a) (2002), shall apply-

. We heard oral argument in this case at the University of South Dakota School of Law, Vermillion, South Dakota, as part of this court's "Project Outreach.” This practice was developed as part of a public awareness program to demonstrate the operation of a Federal Court of Appeals and the military justice system.

. The CPPA consists of §§ 18 U.S.C. 2251, 2252, 2252A, 2260(b)(2000).

. The Court of Criminal Appeals deleted that portion of the reprimand that referred to "distributing” child pornography because Reeves did not distribute child pornography. United States v. Reeves, No. ARMY 20010497, slip op. at 2 (A.Ct.Crim.App. May 30, 2003).

. We granted review of the following issue raised by appellate defense counsel:
WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN UPHOLDING APPELLANT'S CONVICTION UNDER THE CHILD PORNOGRAPHY PROTECTION [sic] ACT, 18 U.S.C. § 2251, ET SEQ., DESPITE THE SUPREME COURT'S PRONOUNCEMENT THAT THE CPPA DEFINITION OF CHILD PORNOGRAPHY IS UNCONSTITUTIONAL, ASHCROFT v. FREE SPEECH COALITION, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), AND THIS COURT'S DECISION THAT ASHCROFT v. FREE SPEECH COALITION REQUIRES THAT ACTUAL MINORS WERE USED IN PRODUCING THE PORNOGRAPHIC IMAGES. SEE UNITED STATES v. O’CONNOR, 58 M.J. 450 (C.A.A.F. 2003).
United States v. Reeves, 60 M.J. 376-77 (C.A.A.F.2004)(order).

. The specified issues were:
I. WHETHER 18 U.S.C. § 2252A(a)(2), WHICH IN PART PROSCRIBES KNOWING RECEIPT OF CHILD PORNOGRAPHY THAT HAS TRAVELED IN “FOREIGN COMMERCE,” HAS EXTRATERRITORIAL APPLICATION.
II. WHETHER 18 U.S.C. § 2252A(a)(5), WHICH PROSCRIBES KNOWING POSSESSION OF CHILD PORNOGRAPHY "ON ANY LAND OR BUILDING OWNED BY, LEASED TO, OR OTHERWISE USED BY OR UNDER THE CONTROL OF THE U.S. GOVERNMENT," HAS EXTRATERRITORIAL APPLICATION.
III. WHETHER 18 U.S.C. § 2251(a), WHICH IN PART PROSCRIBES USING A MINOR TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT FOR THE PURPOSE OF PRODUCING A VISUAL DEPICTION OF THAT CONDUCT USING MATERIAL THAT HAS TRAVELED IN “FOREIGN COMMERCE,” HAS EXTRATERRITORIAL APPLICATION.
IV. WHETHER 18 U.S.C. § 2252A(a)(2) IS BEING APPLIED DOMESTICALLY OR EXTRATERRITORIALLY WHEN APPLIED TO THE ACT OF DOWNLOADING AND RECEIVING CHILD PORNOGRAPHY AT A COMPUTER LOCATED IN GERMANY WHEN THAT MATERIAL WAS "SENT FROM THE U.S. THROUGH THE INTERNET."
V. WHAT EFFECT, IF ANY, IS THERE ON APPELLANT’S GUILTY PLEA TO RECEIVING CHILD PORNOGRAPHY IN VIOLATION OF 18 U.S.C. § 2252A(a)(2), FROM APPELLANT’S ADMISSION DURING THE PROVIDENCE INQUIRY THAT THE IMAGES "WERE SENT FROM THE U.S. THROUGH THE INTERNET TO ME.”

. Section 2251(a) was originally enacted in 1978 as part of the Protection of Children Against Sexual Exploitation. It was amended a number of times over the years and in 1996 it was incorporated into the CPPA.

. Our discussion of Congress’ intent is also informed by an analysis of the "Territory or Possession of the United States" language in § 2251. Although this phrase refers to physical locations outside of the fifty United States, it is not a broad or all encompassing phrase. The "territories” of the United States are generally defined as including Guam, the United States Virgin Islands and American Samoa, as well as the Commonwealths of Puerto Rico and the Northern Mariana Islands. See Daniel H. MacMeekin, The Overseas Territories and Commonwealths of the United States of America (2000), available at http://www.macmeeldn.com/Library/terr+ commonw2.htm. The United States also asserts sovereignty over, and administers, a number of small islands which do not have permanent populations. These islands are often referred to as "possessions”. These include Howland, Baker, and Jarvis Islands; Kingman Reef; and Johnson, Palmyra, Wake, and Midway Atolls, all in the Pacific; and Navassa Island in the Caribbean. Id. Congress’ decision to use the phrase "Territories and Possessions of the United States” suggests that Congress wished to limit the statute's application rather than to broaden it.

. The military judge defined "receiving” as "to take into one’s possession and control or accept custody of____”

. With respect to the question of whether all of the email messages in Reeves’ Excite account were "resident" on Internet servers located in the United States, Excite.com (which was operated by At Home or Excite@Home until the company declared bankruptcy in late 2001) had both domestic and international operations during the time period in which Reeves was using his excite.com account to receive child pornography.
See At Home Corporation, Form 10-K, Annual Report for Fiscal Year 2000, available at http://www.sec.gov/Archives/edgar/data/ 1020620/000101287001001498/0001012870-01-001498-0001.txt ("We also lease space at smaller facilities in various locations throughout the United States as well as in several international locations.”). Reeves admitted only that images were sent to him from the U.S. “through the Internet....” The record does not include any information about where the servers on which his opened and unopened email messages were located.

. In Free Speech Coalition the Supreme Court determined that certain portions of the definition of term "child pornography” used in § 2252A were unconstitutional, specifically the "or appears to be” language of § 2256(8)(B) and the entirety of § 2256(8)(D), specifically the "conveys the impression” language. 535 U.S. at 256, 258, 122 S.Ct. 1389. Prior to Free Speech Coalition, knowing possession and receipt of images of child pornography, actual or virtual, was sufficient to establish one of the factual predicates for a provident guilty plea under the CPPA. Following the decision, the actual character of the visual depictions is a factual predicate to any plea of guilty under the CPPA therefore requiring an inquiry into the "virtual” or "actual” nature of the images. O'Connor, 58 M.J. at 453.

. Here the military judge did not use the "or appears to be” or the "conveys the impression” language focused on by the Supreme Court.

. The phrase "engaged in sexually explicit conduct” as found in § 2251(a) is defined in § 2256 to be a depiction of "lascivious exhibition of the genitals.” That term has been held to be constitutional. United States v. Wiegand, 812 F.2d 1239 (9th Cir.1987).

. Because of our decision in this case, the specifications of Charge II will necessarily have to be amended prior to any rehearing to allege lesser included offenses of conduct prejudicial to good order and discipline in the armed forces, or of a nature to bring discredit upon the armed faces in violation of clauses 1 and/or 2 of Article 134, UCMJ.