UNITED STATES

v.

Captain Stephen J. DODGE, United
States Air Force.

ACM 34870.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 5 Dec. 2000.

Decided 16 March 2004.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Jennifer K. Martwick.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Lance B. Sigmon, and Captain C. Taylor Smith.

Before PRATT, MALLOY, and GRANT, Appellate Military Judges.

## OPINION OF THE COURT

MALLOY, Judge:

This case began as a guilty plea general court-martial, before a military judge sitting alone, and ended as a lengthy, complex and acrimonious mixed-plea case before members. Initially, under the terms of a pretrial agreement, the convening authority agreed to not approve confinement in excess of 5 years in exchange for the appellant's offer to plead guilty to most, but not all, of the charges (in some instances by exceptions and substitutions), and to be sentenced by a military judge alone.[1] Ultimately, however, the appellant withdrew from the pretrial agreement after a near-complete providence inquiry and entered pleas of not guilty. After a two-month continuance, the appellant entered guilty pleas anew to most of the offenses to which he had originally pleaded guilty. This time, however, he did so without the benefit of a pretrial agreement.

In accordance with his final pleas, the appellant was convicted of one specification of absence without leave (AWOL), terminated by apprehension, in violation Article 86, UCMJ, 10 U.S.C. § 886; one specification of wrongful use of marijuana on divers occasions, one specification of wrongful distribution of marijuana on divers occasions, one specification of wrongful possession of marijuana, all in violation of Article 112a, UCMJ, 10 U.S.C. § 912a; one specification of conduct unbecoming an officer by surreptitiously videotaping a juvenile male undressing, showering, urinating and masturbating in the appellant's bathroom, in violation of Article 133, UCMJ, 10 U.S.C. § 933; one specification of inducing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, four specifications of taking indecent liberties with boys under 16 years of age, one specification of committing an indecent act on a male under 16 years of age, one specification of dishonorably failing to maintain sufficient funds in his checking account to cover a check upon presentment, and one specification of possessing child pornography, all in violation of Article 134, UCMJ, 10 U.S.C. § 934.

Contrary to his pleas, the court members convicted him of one specification of wrongful use of cocaine on divers occasions, in violation of Article 112a, UCMJ. Consistent with his pleas, they acquitted him of one specification of wrongful use of methamphetamine on divers occasions and of the greater offense of desertion terminated by apprehension, in violation of Article 85, UCMJ, 10 U.S.C. § 885. Additionally, the military judge dismissed several specifications on defense motion as the case progressed through trial, including one specification of transporting child pornography, one specification of breaking restriction, and one specification of dishonorably failing to maintain sufficient funds in his checking account to cover a check, all in violation of Article 134, UCMJ.

The members sentenced the appellant to dismissal, confinement for 15 years, and forfeiture of all pay and allowances. Post-trial, the staff judge advocate recommended that the convening authority reduce the confinement to 12 years. The convening authority approved the sentence as adjudged on 31 December 2001. The case is before this Court for mandatory review under Article 66(c), UCMJ, 10 U.S.C § 866(c).

On appeal, the appellant submitted three assignment of errors: 1) That the military judge erred when she refused to recuse herself after the appellant completed the entire

---

1. The pretrial agreement was never examined by the military judge and was not marked as an appellate exhibit because the appellant withdrew his pleas before the military judge accepted them. The military defense counsel included a copy of the agreement with the appellant's post-trial submissions to the convening authority.

providence inquiry and then withdrew his pleas; 2) That the appellant's plea to possession of child pornography was improvident in light of the Supreme Court's decision in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); and 3) That the appellant's sentence to a dismissal and 15 years' confinement is inappropriately severe. Although we hold against the appellant on the first two issues, we agree with the appellant that the sentence to confinement for 15 years is inappropriately severe.

## I. Recusal of Military Judge

### A. Background

This case began as a judge-alone guilty plea with a pretrial agreement that, in hindsight, was very favorable to the appellant and would have resulted in 10 years less confinement than was adjudged. After entry of pleas, the military judge conducted an extensive providence inquiry that spanned approximately 248 pages of the record of trial. This inquiry fully complied with Rule for Courts–Martial (R.C.M.) 910(c) and *United States v. Care,* 40 C.M.R. 247, 1969 WL 6059 (C.M.A. 1969) and established a factual basis for the pleas with one exception. This exception was resolved when the military judge granted a defense motion to dismiss the breach of restriction specification, and the convening authority agreed to continue to be bound by the pretrial agreement.[2]

Prior to making any findings concerning the voluntariness of the appellant's pleas and waiver of his constitutional rights, the parties discussed their views on the maximum punishment. And this, it appears, is where things began to go awry. During this discussion, the military judge ruled correctly that the minimum punishment of 10 years confinement found in 18 U.S.C. § 2251(d) did not apply to a violation of that statute charged under Article 134, UCMJ, Clause 3.[3] *Manual for Courts–Martial, United States (MCM),* Part IV, ¶ 60(c)(4)(i) (2000 ed.). She then ruled the minimum punishment in the case was "no punishment." Thereafter, the defense asked for a recess to discuss with the appellant "the ruling of the court regarding no minimum punishment in this case." When court resumed, the civilian defense counsel announced that in light of this ruling and other matters unrelated to it, the appellant desired to withdraw his guilty pleas and proceed to trial. The trial counsel objected to the withdrawal of guilty pleas and urged the military judge not to allow it. He argued the plea inquiry was essentially complete and, therefore, it was too late for the appellant to change his pleas, especially in light of the amount of time that had been spent on the matter.

In discussing her reasons for allowing the appellant to withdraw his pleas, the military judge expressed her concern about the conduct of trial and defense counsel for the first time.[4] Specifically, she noted:

I haven't made a finding with regard to the plea because I haven't gotten there, counsel. I don't know why I haven't gotten there, to be quite honest with you, because this was, quite frankly, not a case that required these many curves in the road. If the parties had come into the court, dealt straight up with the court, been candid before the court, as to what their motives and purpose were for being here, then I don't think we would be here. But whatever it is that is going on behind the scenes, and I don't know what it is, we

---

2. Pursuant to the terms of pretrial agreement, the appellant pleaded guilty, by exceptions and substitutions, to transporting child pornography, contrary to 18 U.S.C. § 2252A, in violation of Article 134, UCMJ. Although not an issue during the plea inquiry, the military judge later ruled the specification was defective and dismissed it. She specifically noted at the time she dismissed it that she would not have found the appellant's plea to the offense provident.

3. This ruling should not have surprised an experienced defense counsel. *Cf. United States v. McElhaney,* 54 M.J. 120 (C.A.A.F.2000) (Title 18

provisions do not automatically apply to the Uniform Code of Military Justice).

4. This would not be the last time the conduct of counsel would be an issue in the case. When the court reconvened after a 60–day continuance, the military judge felt compelled to admonish counsel that the proceedings were governed by the *Manual for Courts–Martial,* the Eastern Circuit Rules and the Air Force Rules of Professional Conduct. Unfortunately, this had little effect in restoring civility among counsel.

aren't through this plea yet. And we aren't at the point where I have announced ... those magic words that say quote, "acceptance of the guilty plea."

Based on these comments, the civilian defense counsel asserted that the military judge had accused him of misconduct and immediately challenged her for bias. The military judge gave him the opportunity to voir dire her, denied the challenge, and then adjourned the case for 60 days to allow the parties to prepare for a fully litigated trial.

Shortly before the reconvening of the court-martial, the civilian defense counsel filed with the court a document captioned "Notice of Pleas and Forum." [5] This document indicated that the appellant intended to plead guilty to four of the five drug specifications, and not guilty to the remaining charges and specifications. Regarding forum selection, the pleading stated:

> Captain Dodge objects to the participation in this trial as [sic] Military Judge COL Linda Murnane. As COL Murnane previously conducted a providence inquiry of Captain Dodge on pleas of guilty entered by Captain Dodge's counsel, she could not, thereafter, reasonably sit as finder of fact in this case. Captain Dodge believes that his rights to forum selection provided in the Code have been improperly circumscribed by the continued participation of Judge Murnane once he withdrew his pleas of guilty. As a practical matter, Captain Dodge will be denied the option of selecting as [sic] forum of Military Judge alone. Accordingly, and solely because Captain Dodge has no other practical option, Captain Dodge selects trial by officer members.

The appellant had now shifted the focus of concern from the alleged bias of the military judge toward the civilian defense counsel to the belief that the military judge had heard too much from the appellant regarding his criminal conduct to sit as an impartial factfinder. The appellant continued to argue, however, that a comment the military judge

made about him wasting the court's time by changing his pleas after the lengthy plea inquiry created at least the appearance of bias toward him, such that the military judge should not continue on the case.[6] After again allowing defense counsel to question her and hearing argument, the military judge denied his challenge. In doing so, she noted that, among other things, she had not accepted the appellant's plea, had not formed an opinion concerning his guilt or innocence, and everything she knew about the case was learned in her judicial capacity. She further placed her comment about wasting the court's time in proper context, explaining that it was directed toward the trial counsel's argument that she had the authority to preclude the appellant's withdrawal of his pleas in light of the lengthy plea inquiry.

This was not the end of the recusal issue, however, for the appellant once again changed his pleas. During the course of a second providence inquiry, which now involved pleas different from those on the appellant's written "Notice of Pleas and Forum," the military judge revisited the issue with the appellant. This time, the following colloquy occurred:

> MJ: Just so I am absolutely clear to you, on the issue of whether or not the judge should have recused herself from further participation in your court-martial, the only issue that you will have remaining, if your pleas are accepted as to these current pleas, is whether or not the judge should have recused herself because she heard your previous pleas on Specification 4 of Charge 1. All other portions of that motion that the Military Judge should have recused herself will be waived by your now pleas of guilty. Do you understand that?
>
> ACC: I do, Your Honor.
>
> MJ: And you have consulted with your counsel about that?
>
> ACC: I have, Your Honor.
>
> MJ: And you agree with that decision?
>
> ACC: Yes, Your Honor.

---

**5.** This document does not accurately reflect the pleas the appellant ultimately entered.

**6.** The comment was taken out of context. Suffice it to say, the comment did not evidence bias toward the appellant or his civilian defense counsel.

With the exception of Specification 4 of Charge 1 (use of cocaine),[7] the appellant's pleas were now substantially the same as his original guilty pleas and the military judge heard substantially the same information from the appellant that she had heard during the first providence inquiry. However, there was no longer a stipulation of fact before the court, and the appellant did not renew his request for trial before military judge alone, which had been required under the now abandoned pretrial agreement.

### B. Discussion

■ We review a military judge's decision not to recuse herself for abuse of discretion using an objective standard in a case when, as here, there is no evidence of actual bias. *United States v. Butcher*, 56 M.J. 87 (C.A.A.F.2001); *United States v. Norfleet*, 53 M.J. 262 (C.A.A.F.2000). We find no factual or legal support for the present assertion that the military judge was disqualified from further participation in this case after the appellant was allowed to withdraw his initial pleas prior to findings and acceptance of those pleas.

In overview, there are several points that make the appellant's position less than compelling. First, his assertion that the military judge's continued presence on the case after the first providence inquiry circumscribed his right to trial by military judge alone is legally incorrect. Second, his continued focus on his initial guilty pleas all but ignores the fact that those pleas were nearly the same as his ultimate pleas with one exception. Third, he expressly waived the issue on the record, after consulting with counsel, during the second providence inquiry (again, save for the contested cocaine offense).[8] What we are left with is the argument that the military judge was disqualified not because she had rejected the appellant's guilty pleas and

could not thereafter fairly continue on the case as the factfinder, but rather she was disqualified because she heard the same information twice.

■ The gravamen of the appellant's argument at trial was the assertion that the military judge's continued participation denied him his right of forum selection. He averred that, but for her refusal to recuse herself, he would have selected trial before military judge alone. Thus, before turning to the issue of recusal, we briefly address the correctness of the appellant's assertion that he had a right to trial by military judge alone and his present assertion that he was unfairly "forced to choose a panel of officer members" in contravention of this right. While it is certainly true that an accused has the absolute right to request trial by military judge alone, it is equally true that there is no concomitant absolute right to have it approved. Article 16(1)(B), UCMJ, 10 U.S.C. § 816(1)(B); R.C.M. 903(c)(2)(B). Under R.C.M. 903(c)(2)(A), the ultimate decision to grant or deny such a request is within the sound discretion of the military judge.

■ In this case, we cannot say whether the military judge's denial of a request for trial by judge alone would have been an abuse of discretion because the appellant never made such a request. *Cf. United States v. Morris*, 49 C.M.R. 653, 658, 1975 WL 15885 (C.M.A.1975) ("Congress intended to invest the judge with some discretion as to whether to approve or disapprove a submitted request.") We can say, however, had the military judge actually denied such a request not only would the denial have been consistent with R.C.M. 903, but the appellant would also have nothing to complain about. *See United States v. Winter*, 35 M.J. 93 (C.M.A.1992) (A military judge is not disqualified by participation in a failed guilty plea and has the discretion to impanel members).[9]

---

7. This was one of three contested offenses considered by the members. The members convicted the appellant of this offense and acquitted him of the other two contested offenses (use of methamphetamine and desertion).

8. The appellant's other two pleas of not guilty were consistent with his earlier pleas. Thus, the military judge heard no evidence about his use of

methamphetamines and heard evidence only concerning the lesser included offense of AWOL.

9. We are aware of the Army Court of Criminal Appeals' approach, cited by the appellant, expressing a preference for recusal after a withdrawal of guilty pleas. *United States v. Rhule*, 53 M.J. 647 (Army Ct.Crim.App.2000). This Court rejected that approach long ago. *United States v.*

An accused who is tried before an impartial panel, after denial of a request for trial by judge alone, has not been denied a right under the United States Constitution or the Uniform Code of Military Justice. *See Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (An accused's only constitutional right concerning the method of trial is an impartial trial by jury). *Accord United States v. Butler,* 14 M.J. 72, 73 (C.M.A.1982) (Applying *Singer,* an accused has no absolute right to trial by military judge alone). The appellant was neither denied his right under the Code to request trial by military judge alone, nor was he forced to undergo trial with members.

While the appellant did not have the absolute right to trial by judge alone, he clearly did have the constitutional right to insist that his trial with members was presided over by an impartial military judge. *See United States v. Quintanilla,* 56 M.J. 37 (C.A.A.F. 2001). Accordingly, we turn to the question of whether the military judge was disqualified from presiding over the case.

■ R.C.M. 902 governs disqualification of military judges. Section (a) provides the general rule that a military judge shall disqualify herself when her "impartiality might reasonably be questioned." Section (b) codifies specific grounds for which a military judge shall disqualify herself. Under section (e), an accused may waive a disqualification based on the appearance of impartiality, provided there is full disclosure on the record. An accused may not, however, waive a disqualification based on one of the specific grounds set forth in Section (b). Here, the appellant points to no specific grounds listed in R.C.M. 902(b) that would support disqualification of the military judge. Instead, he argues that the military judge should have disqualified herself based simply on her participation in the first providence inquiry.

We reject this argument for two reasons. First, the appellant waived the issue on the record during the second providence inquiry with respect to all but one specification, and this waiver was specifically allowed under the rule. Second, as we have noted, this case is

*Melton,* 1 M.J. 528 (A.F.C.M.R.1975). We see no

clearly distinguishable from a case where pleas are rejected after the accused has incriminated himself and the matter proceeds to trial. In this regard, the appellant would have us overlook the obvious: namely, that he ultimately entered pleas of guilty that were substantially the same as his initial pleas. We simply fail to see any compelling logic in the assertion that, having heard the appellant explain in court his criminal conduct, the military judge was disqualified from hearing him explain it to her a second time. Whatever merit there was to the appellant's position at the time he changed his pleas to not guilty vanished when he again changed his pleas. With respect to the one remaining specification to which there was a changed plea, we find nothing in the record even remotely suggesting that the military judge's knowledge regarding this offense created the appearance that her "impartiality might reasonably be questioned."

We find nothing in this 27–volume, 3191–page, mixed-plea record that even remotely suggests that the military judge was anything but the model of judicial probity or that her continued involvement on the case diminished the perception of fairness of the military justice system. Indeed, the record makes manifest that she exercised great restraint in the face of repeated uncivil, and at times disrespectful conduct by counsel to keep this case moving toward completion. Under the difficult circumstances and challenges of this case, we are reminded there is corollary to the recusal rule. A judge "has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum,* 409 U.S. 824, 837, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). We hold that the military judge did not abuse her discretion.

## II. The providence of the plea to possessing child pornography

### A. Background

■ During the course of this second providence inquiry, the appellant again pleaded guilty to possessing child pornography, in violation of 18 U.S.C. § 2252A. The offense was charged under Article 134,

reason to revisit it in this case.

UCMJ, Clause 3, as a federal crime, not capital. MCM, Part IV, ¶ 60(c)(4)(i). The government introduced 60 images of children engaging in sexually explicit conduct, including homosexual and heterosexual oral and anal sodomy. The appellant admitted to downloading the images from the Internet to his personal computer. In defining child pornography for the appellant, the military judge included the now familiar "is or appears to be a minor engaging in sexually explicit conduct" and the "is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct" language found unconstitutional in Free Speech Coalition. The colloquy between the appellant and the military judge concerning the "actual" status of the individuals depicted in these images as children contained the following:

> MJ: Did you know that what you had three or more images of was, in fact, child pornography as I've defined that term for you?
>
> ACC: I did, your Honor.
>
> MJ: So you are satisfied that the images involved children that were posed in a manner consistent with the definition of child pornography, as I gave it to you?
>
> ACC: Yes, Your Honor, that's correct.
>
> MJ: And by children—a minor, as used in this specification, means any person under the age of eighteen years. Do you understand that?
>
> ACC: Yes, Your Honor, I do.
>
> MJ: Are you satisfied that the individuals that were in the images which you possessed during the charged time in your residence in Alexandria, Virginia, were individuals who were under the age of eighteen?
>
> ACC: Can you give me a moment, Your Honor?
>
> MJ: Yes.
>
> (Accused and counsel conferred.)
>
> ACC: Your Honor, I'm satisfied that some of the images I possessed included minors under the age of eighteen.

> MJ: And those images where you are satisfied the individuals were under the age of eighteen and that they were transported in foreign or interstate commerce, are you satisfied that you knew those individuals were under the age of eighteen?
>
> ACC: Yes, Your Honor, I am.

At no time during this discussion was the "appears to be" or "conveys the impression" language alluded to by either the appellant or military judge.

### B. Discussion

Once again, we are called to examine whether a guilty plea to possession of child pornography, charged as a violation as 18 U.S.C. § 2252A, was improvident in light of *Free Speech Coalition* and the Court of Appeals for the Armed Forces' (CAAF) decision in *United States v. O'Connor*, 58 M.J. 450 (C.A.A.F.2003). In *Free Speech Coalition*, the Supreme Court declared unconstitutional two statutory definitions of child pornography found in the Child Pornography Prevention Act (CPPA) of 1996, 18 U.S.C. §§ 2251–2260. This included the "or appears to be" language of § 2256(8)(B), and the entirety of 2256(8)(D), criminalizing images that are "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual image of a minor engaging in sexual explicit conduct." Since this was a pre-*Free Speech Coalition* case, the military judge used a definition of child pornography that included the unconstitutional language. We find this was error.

In *O'Connor*, CAAF provided the following guidance for reviewing guilty pleas where both the constitutional and unconstitutional language was used to define the offense:

> In the wake of *Free Speech Coalition*, the relevant provisions of 18 U.S.C. 2256(8) require that the visual depiction be of actual minors engaging in sexually explicit conduct. The 'actual' character of the visual depictions is now a factual predicate to any plea of guilty under CPPA.

58 M.J. at 453. Here, there is no claim that the appellant was mislead by the now unconstitutional definition found in § 2256(8)(D). Although included in the overall definition

provided to the appellant, it played no part in the plea discussion. Nor does the appellant claim his plea to this offense is deficient for other reasons. Thus, the sole question before us is whether the record objectively supports the conclusion that the factual predicate for the appellant's plea was his admission that he possessed images of "actual" children engaging in sexually explicit conduct. After examining the military judge's questions and the appellant's responses thereto, as well as the pictures themselves, we are satisfied that the record supports this conclusion. At no time did either the appellant or the military judge use the "appears to be" language in discussing the images. In questioning the appellant, the military judge used the terms "children that were posed in a manner consistent with the definition of child pornography," "a minor," "any person under the age of eighteen," and "individuals [who] were under the age of eighteen." The appellant responded with equal clarity that he was "satisfied that some of the images [he] possessed included minors under the age of eighteen." Although neither used the adjective "actual," a fair reading of their exchange supports the objective conclusion that they were discussing images of actual children. Finally, we have reviewed the images and are satisfied that they are, as the appellant admitted, depictions of actual children engaging in sexually-explicit conduct. *United States v. Sanchez*, 59 M.J. 566 (A.F.Ct. Crim.App.2003).

We will set aside a guilty plea only when the record reveals "a substantial basis in law and fact for questioning the plea." *United States v. Prater*, 32 M.J. 433 (C.M.A.1991). We hold that there is no such basis in this case, notwithstanding the military judge's use of the unconstitutional language in defining child pornography.

### III. Sentence Appropriateness

In his final assignment of error, the appellant argues that his sentence to dismissal and 15 years confinement is too severe and requests that we use our powers under Article 66(c), UCMJ, to ameliorate this harshness. The appellant makes several arguments in support of this request. First, he argues that the pretrial agreement he entered with the convening authority and then voluntarily abandoned, provides an indication of what the convening authority and his staff judge advocate believed to be an appropriate sentence for his crimes. A second and related argument is whether he should not be penalized for exercising his constitutional right to plead not guilty. Finally, he revisits the recusal issue to argue that he was unfairly forced to request trial before members when the military judge improperly failed to disqualify herself.

None of these arguments are persuasive. It is now a fact of life that plea bargains are an entrenched practice in the military justice system. There is no doubt that such agreements may confer substantial benefits on an accused that he or she might otherwise not receive, and, therefore, may provide a powerful inducement to waive important constitutional rights. *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995). Nonetheless, there is nothing unfair about requiring an accused to make hard choices concerning his or her rights. An accused who withdraws from a pretrial agreement and then ends up with a sentence more severe than bargained for has no cause to complain that he should receive the benefit of the agreement because, in hindsight, he made an unwise choice. *United States v. Bray*, 49 M.J. 300 (C.A.A.F.1998). Moreover, we reject the assertion that the cap in the agreement is necessarily reflective of what the convening authority or the staff judge advocate thought the sentence should be. We simply do not know what motivated the convening authority to accept the agreement before trial and we will not join in the appellant's speculation. We do know, however, that neither the convening authority who accepted the agreement, nor the staff judge advocate who recommended its approval, served in these positions at the time action was taken. Reasonable convening authorities and staff judge advocates can differ as to an appropriate sentence. *Shepardson v. Roberts*, 14 M.J. 354 (C.M.A.1983). This is particularly true when they have the benefit of a fully developed record and the judgment of experienced and uniquely qualified officers. Article 25, UCMJ, 10 U.S.C. § 825.

We also reject that the appellant should obtain sentencing relief because he was forced to select trial before members when the military judge refused to recuse herself. In point of fact, the appellant was not forced to do anything. He selected the forum when he withdrew from the pretrial agreement and entered pleas of not guilty, and he never revisited the issue when he again changed his pleas. More importantly, however, we reject the implication that trial before an impartial panel of court members—the very essence of the protection afforded by the Constitution and the Uniform Code of Military Justice—is unfair. *Singer,* 380 U.S. at 36, 85 S.Ct. 783 ("In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant to undergo a jury trial is contrary to his right to a fair trial or due process").

Independent of these arguments, however, we have the duty to determine whether the sentence is appropriate. We may only affirm findings and sentence that we find are correct in law and fact and determine, on the basis of the entire record, should be approved. Article 66(c), UCMJ. In performing this task, we exercise our judicial powers to insure that justice is done and the appellant receives the punishment he deserves. Performing this function does not allow us to grant clemency. *United States v. Healy,* 26 M.J. 394 (C.M.A.1988). Having performed that task here, we find appropriate only so much of the sentence as provides for a dismissal, confinement for 12 years and forfeiture of all pay and allowances.

### IV. Conduct of Counsel

Although we are satisfied that the appellant received a fair trial, we would be remiss if we did not mention that the conduct of counsel in this case has not gone unnoticed by this Court. Regrettably, we believe it is necessary for us to refer the record of trial to The Judge Advocate General for further review consistent with the Air Force Rules of Professional Conduct. *See* Air Force Rules of Professional Conduct, Rule 8.3 (20 Dec 2002) and Courts of Criminal Appeals Rules of Practice and Procedure, Rule 9 (1 May 1996).

Like the military judge, we do not know "what was going on behind the scenes," but we do know that lack of civility among counsel, and in some instances disrespect toward the court, permeates this record of trial. Despite early and repeated steps by the military judge to ensure that counsel's conduct comported with the Rules of Professional Conduct and the decorum expected in a United States courtroom, we find comments from her such as these on the record:

■ We've had a couple of events in the courtroom that cause me to want to make sure that all parties understand that this court-martial will be governed by the Manual for Courts–Martial and by the Eastern Circuit Rules of Practice and by the Air Force Rules of Professional Conduct.... I also took the opportunity during the course of the recess to review TJAG Policy Letter 40 which deals with the issues of civility among counsel. And the reason I did this is, quite frankly, that at the end of the last 39a session after the court had recessed and had indicated that we weren't going to resume until today's date, I observed an altercation between counsel for the accused and a person who is not in the courtroom but was the deputy staff judge advocate, a person I knew to be the deputy staff judge advocate at the Eleventh Wing.

■ Counsel, during the recess, I held an 802 session with counsel and indicated the next order of business I planned to take up was to resurrect the issue of whether I need an armed bailiff in the courtroom. It should probably not have been a particular surprise to the Court that with the rancor and discourtesy that the counsel have shown to each other throughout the course of this proceeding that at the point at which we are now at, that is the sentencing portion of the court where some very emotional issues may be addressed by various witnesses potentially, that there would continue to be discord and disharmony among the professionals who appear before this Court.

■ But I will ask all counsel to please act with decorum and demeanor in the courtroom that is appropriate.

■ Now counsel I've had enough of both of you, both of you. I didn't think I'd have to say it again, but the swipes at each other are going to stop right now.

■ And before you do that counsel, I certainly want to give you all the time you need. I hope I gave trial counsel all the time you feel you need. I am not as concerned that you be brief as that you be courteous to one another. And it is my sincere regret that, despite my efforts to have the two of you be courteous to one another throughout the course of this proceeding, it was only when I raised my voice in this courtroom today for the very first time that I saw that kind of cooperation between counsel, and I deeply regret that.

In addition to this lack of civility, serious allegations of professional misconduct were levied against the civilian defense counsel and the government moved to disqualify him from the case based on this misconduct. These allegations concerned whether counsel attempted to, or in fact did, interfere with the testimony of two civilian government witnesses and the service of process on one of those witnesses. The military judge, of course, was aware of these allegations since it formed the basis of the motion to disqualify the civilian defense counsel and caused her to take a number of steps to ensure that the appellant understood his right to conflict-free counsel. These steps included securing the appointment of a conflict-free counsel to advise the appellant on his right to conflict free counsel, personally and repeatedly advising him on the record as to those rights and, ensuring that he desired the civilian defense counsel to continue to represent him.[10]

In the course of ruling on evidentiary motions related to the alleged misconduct, the military judge did, however, make findings that bear on the issue. Specifically, she found that the one of the civilian witnesses did receive a phone call from a person who represented himself as the appellant's counsel and was advised by this person that he had not been properly subpoenaed and that "the testimony that he was going to give would be forwarded to prosecution authorities for [his] future prosecution and that he should obtain counsel for himself." The military judge also found that this same witness told an Air Force Office of Special Investigation (OSI) special agent that the defense counsel contacted him a second time and instructed him to "make himself scarce" because the OSI was looking to serve him with a subpoena.

Other than making findings necessary to support her evidentiary rulings, the military judge declined to resolve these allegations of misconduct, noting that that could be done later by the appropriate regulatory body "with all of the guarantees of due process afforded to such a procedure." To our knowledge, these serious allegations remain unresolved. Accordingly, we refer the record of trial to The Judge Advocate General.

This Court has not reached any conclusion concerning the professional conduct issues in this case; however, the record is such that referral to The Judge Advocate General is most appropriate. We remind all practitioners who practice before Air Force courts, including this Court, that they have a professional obligation to conduct themselves in accordance with the standards established by The Judge Advocate General. Justice and public perception in the fairness of the military justice system demand nothing less.

### V.   Conclusion

Only so much of the sentence as provides for dismissal, confinement for 12 years and forfeiture of all pay and allowances is affirmed. The findings, as approved, and sentence, as modified, are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed,* 54 M.J. 37 (C.A.A.F.2000). Accordingly, the findings, as approved, and the sentence, as modified, are

**AFFIRMED.**

---

10. There is no evidence that the appellant's military defense counsel was in any way involved with the alleged misconduct. Nor is there any indication that the military judge's comments concerning lack of civility were specifically directed at her.