CRAWFORD, Judge
(dissenting):
I respectfully dissent because the majority: (1) perpetuates this Court’s rejection of federal practice in applying Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); (2) without articulation of any military necessity or dis *341 tinction, suggests that servieemembers accused of child pornography offenses have First Amendment and trial rights paramount to those extended by the federal circuits to similarly situated civilian defendants under the same statute; and (3) conducts no balancing or other analysis before issuing an opinion that implicitly promotes artificially elevated rights for servieemembers accused of federal child pornography offenses over those of the military community as a whole.
The effects of the majority’s opinion go beyond this single case and will have a very broad impact on a multitude of military prosecutions under the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2225A (2000), as well as on the military communities of all the services.
BACKGROUND
At a general court-martial Appellant was tried by a military judge sitting alone, and pled guilty to violating a lawful general order by using a government computer to search for minor females in several states and countries, but not guilty to all other charges and specifications. Following mixed pleas, the military judge convicted Appellant of one specification of possession of child pornography, two specifications of communicating indecent language to a child, two specifications of attempting to communicate indecent language to a child, and one specification of violating a lawful general order by using a government computer for nonofficial purposes, in violation of Articles 134, 80, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 934, 880, and 892 (2000). The military judge acquitted Appellant of one specification of attempted carnal knowledge, three specifications of communicating indecent language to a child, and one specification of communicating indecent material to a child. The convening authority approved the sentence of a dishonorable discharge, fifty-four months of confinement, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Cendejas, No. ACM 34864, 2004 CCA LEXIS 50, 2004 WL 388960 (AF.Ct. CrimApp. Feb. 10, 2004).
This Court granted review of the following issue, with briefs, on November 26, 2004:
WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FAILING TO SET ASIDE APPELLANT’S CONVICTION FOR POSSESSION OF CHILD PORNOGRAPHY DESPITE THE COURT’S CONCLUSION THAT THE CONVICTION WAS BASED ON CONSTITUTIONAL ERROR.
Thus, the issue centers on one charge and specification: possession of “child pornography” in violation of 18 U.S.C. § 2252A(a)(5)(B).
FACTS
This case differs from any of our previous applications of Free Speech Coalition in which this Court has reversed a conviction. See, e.g., United States v. O’Connor, 58 M.J. 450 (C.A.A.F.2003). But see United States v. Thompson, 57 M.J. 319, 319 (C.A.A.F. 2002)(“[T]he testimony and the evidence establish that the exhibits are pictures of actual children.”) (Crawford, C.J., dissenting). More particularly, this case involves a military judge who denied Appellant’s constitutional challenge to 18 U.S.C. § 2252A. After this motion to dismiss was denied, Appellant pled not guilty to the possession of child pornography offense. The Government called two witnesses to prove the offense. First, an investigator testified that Prosecution Exhibit 6 contained twenty pictures of naked females found on Appellant’s home computer. After the foundation was laid for that exhibit, the Government offered it into evidence. The defense counsel objected to photographs 7, 9, 17, and 19 because no genitalia was exposed. The military judge sustained the objection only as to photograph 9. The second witness was a board certified pediatrician who testified that the physical characteristics of the females in the photographs were such that these were photographs of children. The military judge indicated that he would “look at the pictures and ... make a determination” about whether it was child pornography. The military judge stated: “Now I recognize ... that part of *342 [the child pornography] calculus, if you will, is me saying I look at the pictures and I make a determination. I am not persuaded in that his witness, terms of telling me a number of ages, is helpful to me.” The military judge indicated that he could “sort it out” and did not need expert testimony. In its case on the merits, the defense called a witness who testified that two of the websites from which Appellant had downloaded the pictures in Prosecution Exhibit 6 had legal disclaimers on them that claimed the models depicted were at least eighteen years of age. In rebuttal the Government called a witness who indicated that a computer user would have been able to access the pictures on one of the websites without having to view the disclaimer and that Appellant did not have other websites listed in his computer cache. After the testimony, the military judge found Appellant guilty of the wrongful possession of child pornography.
After hearing evidence and applying preFree Speech Coalition law, the military judge convicted Appellant under that statute. The special findings of the military judge and the factfinding of the court below make very clear that the photographs forming the basis for Appellant’s conviction were solely of actual minors.
In this case, the overly broad definitions in 18 U.S.C. § 2256(8) had no factual or legal effect on the findings. After the Government introduced evidence of Appellant’s computer searches for “preteen lolita [sic],” “kiddie,” and “little tits,” an expert was asked to examine a series of photographs seized from Appellant’s computer. This expert explained in great detall how the physical characteristics of the subject(s) in each photograph could be analyzed to determine each subject’s age. The expert was not cross-examined by the defense. The military judge made “special findings” and determined that eight of the twenty images introduced by the prosecution constituted child pornography. Neither the expert’s testimony nor the argument of either counsel suggested in any way that an “appears to be” standard was ever in issue. The key issues in the litigation of this specification were: (1) whether the females depicted were, in fact, under eighteen years of age and (2) whether the depictions themselves were sufficiently lewd to constitute pornography. See generally New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The Court of Criminal Appeals presumed the military judge adequately considered the law as it existed prior to Free Speech Coalition. Cendejas, 2004 CCA LEXIS 50, at *7, 2004 WL 388960, at *3. But even after finding constitutional error — that there was an impermissible consideration of the “appears to be” or “conveys the impression” definitions — the court concluded that any error was harmless beyond a reasonable doubt. 2004 CCA LEXIS 50, at *7-*10, 2004 WL 388960, at *3. Unlike most intermediate appellate courts and this Court, the Court of Criminal Appeals has factfinding powers. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000). It exercised its factfinding powers in this case and held that “A review of all the pictures evaluated in this case by the military judge indicates that the judge resolved even remotely questionable depictions in favor of the accused and found child pornography in only those pictures that contained obvious minors.” 2004 CCA LEXIS 50, at *12, 2004 WL 388960, at *4. The Court of Criminal Appeals continued, “regardless of the possibility of superimposed head, [the pictures] contain bodies that clearly belong to actual children. As long as real children’s bodies are used in the depiction, this form of photo manipulation does not render an image ‘virtual’ instead of ‘real.’” 2004 CCA LEXIS 50, at *10 n. 2, 2004 WL 388960, at *3 n. 2. The court then made its own findings: “Having reviewed the images, we conclude beyond any reasonable doubt that the children depicted in those photographs are real, not virtual.” 2004 CCA LEXIS 50, at *13, 2004 WL 388960, at *4.
DISCUSSION
A. Burden of Going Forward, Burden of Persuasion, and Reasonable Inferences
The initial burden of persuasion and the burden of proof in this case rest with the Government. Once the Government intro *343 dueed Prosecution Exhibit 6, with or without the expert testimony, the military judge could draw reasonable inferences that those photographs involved child pornography without the introduction of any further proof in this ease. And we, like the military judge and the court below, can draw our own conclusions based on the evidence.
The majority would place the burden on the Government in the first instance to prove actual children. That is correct. But, once the photographs are introduced, the burden of going forward, if there is a reasonable inference they are actual children, shifts to the defense, without ever removing the Government’s burden of proof of guilt beyond a reasonable doubt. Thus, there is a constant changing of the burden of going forward but the ultimate burden will always be on the Government to prove guilt beyond a reasonable doubt.
B. Application of Free Speech Coalition in the Federal Courts
The findings by the military judge and the judges on the Court of Criminal Appeals are consistent with the approach employed by most of the federal courts that have considered the issue.[1] These appellate courts have looked to the entire record to determine the legal impact of constitutionally impermissible instructions or explanations. What I said in my dissent in Martinelli, 62 M. J. at 84-87, is equally applicable here:
[The federal] courts have found sufficient evidence that images depicted actual children in cases where a pediatric expert testified as to the age of the child depicted and “the photographs appeared to portray real children.”
Other federal courts addressing this issue have upheld convictions where the factfinder concluded that the images depicted actual children or where the appellate court deemed that it must have been so ____ Thus, it is clear that the great weight of federal authority supports the analysis and conclusions of the Army Court of Criminal Appeals.
This case revisits a familiar question: how is this Court to ensure compliance with Free Speech Coalition when, during the course of court-martial proceedings, the military judge employed the statutory language found by Free Speech Coalition to be overbroad — language that could ostensibly permit conviction based on visual depictions of virtual children? In this case, that question is narrowed to the context of a Care inquiry.
*344 The answer, of course, begins with our duty to follow the decisions of our superior court. But when we impose upon the Government a greater burden than the Supreme Court requires, we must first articulate a balance between the First Amendment and trial rights of a military accused, on the one hand, and the military community’s interest in good order and discipline on the other. Both the service-member and the military community share an interest in a lawful, rational application of the CPPA. Unfortunately, while maintaining a position that affords military child pornographers a level of sanctuary unrecognized by other jurisdictions, the majority provides no balancing and serves only one interest.
As noted above, a growing majority of federal courts have declined an overly restrictive application of Free Speech Coalition, in favor of a measured approach, e.g., consideration of waiver, United States v. Hay, 231 F.3d 630, 639 (9th Cir.2000), plain error, Hall, 312 F.3d at 1259, and other legal theories, in conjunction with an examination of the facts of each case, including the nature and characteristics of the prohibited images themselves. Richardson, 304 F.3d at 1064.
C. Balancing — Now and in Future Cases The approach this Court should take in Appellant’s case need not be inconsistent with the Court’s holding in O’Connor:
We have long recognized that the First Amendment rights of civilians and members of the armed forces are not necessarily coextensive. At the same time, however, we must ensure that the connection between any conduct protected by the First Amendment and its effect on the military environment be closely examined.
This Court’s disposition of Appellant’s case should, at a minimum, treat those very same considerations addressed by O’Con-nor: evaluating any “discussion or focus in the record before us regarding the ‘actual’ character of the images,” and ensuring “that the connection between any conduct protected by the First Amendment and its effect in the military environment [is] closely examined.” Id. Instead, without explanation or elaboration, the majority purports to rely on O’Connor, while conducting no balancing and implicitly declining to adopt the reasoning of the clear majority of Article III courts.
As a matter of general practice, when we choose to depart from Supreme Court precedent, or from the reasoning of the majority of the federal circuit courts that have followed Supreme Court precedent in construing and applying a constitutional or statutory provision, and when that departure is not required by legislative or executive mandate, this Court should articulate the military necessity or distinction that compels our reasoning.
“This Court has long recognized that the military is, by necessity, a specialized society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history.” Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439. Balancing this recognition of the military’s specialized need for enhanced discipline and regulation, our Court has long maintained vigilance in preserving the rights of servicemembers in the court-martial process. See generally United States v. Jacoby, 11 C.M.A. 428, 29 C.M.R. 244 (1960). When we perform this balancing, however, we must not fail to consider the fabric of the “specialized society” in which service-members and their families exist. The Department of Defense and the military departments have emphasized that this “specialized society” consists not only of servicemembers, but of their families as well.
When this Court applies a U.S. Code provision and our superior court’s interpretation thereof in a manner inconsistent with the bulk of Article III courts — presumably for the purpose of providing an elevated level of protection for the trial rights of a military accused — we must weigh the reasons for our divergent application of that *345 statute against the concomitant reduction in the level of protection that statute would otherwise provide to the “specialized society” we also serve. As noted, that society is populated not only by the uniformed men and women who bravely serve our Nation, but by their spouses and children, all of whom have every right to expect a measured and rational application of law by trial and appellate courts. More particularly, in light of this Court’s historical balance between individual First Amendment rights and the needs of the “specialized society,” the members of that society could hardly anticipate that this Court would, despite the weight of federal decisions to the contrary, construe a Supreme Court decision so as to elevate the right of an individual servicemember to traffic in child pornography above the need of that “specialized society” for good order and discipline.
How then, without being compelled to do so by our superior court, by Congress, or by the President, does this Court elevate the First Amendment and fair trial rights of servicemembers over the military’s need for good order and discipline? Are good order and discipline, as well as the safety and security of the community not threatened by the creation and proliferation of child pornography within that community? This Court’s application of Free Speech Coalition not only places us in the minority of federal fora, but, for reasons that remain a mystery, confers on servicemembers accused of owning, distributing, and trafficking in child pornography a status that exalts their constitutional rights above those of civilians accused of identical crimes, while unnecessarily and unintentionally denigrating the legitimate interests of the thousands of other servicemembers and their families who comprise the “specialized society” recognized by the Supreme Court for over thirty years.
Citations and footnotes omitted.
This case amply demonstrates the impact of different levels of protection against trafficking in child pornography for civilian and military communities. Appellant was tried at Grand Forks Air Force Base which is located within the geographic boundaries of the United States Court of Appeals for the Eighth Circuit. If the legal precedent of the Eighth Circuit, which is representative of other circuits that have considered this issue, were applied to the granted issue in this case, Appellant’s conviction would very likely be affirmed.[2] The precedent of this Court, however, not only is out of step with the vast majority of federal courts that have considered the issue, but also provides a lesser level of protection to the military community at Grand Forks Air Force Base, as well as all other military installations.
Because the disposition in this case is yet another step by this Court away from the mainstream of federal practice and from our historical practice of balancing competing rights and interests, I respectfully dissent.
Martinelli, 62 M.J. at 84-85 (Crawford, J„ dissenting).

. Padgett v. United States, 302 F.Supp.2d 593, 598-600 (D.S.C.2004) (finding that language of providence inquiry established actual nature of children and that, by appellate court's own review, photos were of actual children); United States v. Slanina, 359 F.3d 356, 357 (5th Cir.2004) (stating that the "Government was not required to present any additional evidence or expert testimony ... to show that the images downloaded ... depicted real children, and not virtual children”); United States v. Farrelly, 389 F.3d 649, 655 (6th Cir.2004) (affirming conviction where the Government presented "sufficient evidence of actual children” and the trier of fact "was capable of reviewing the evidence to determine whether the Government met its burden to show that the images depicted real children”) (quoting Slanina, 359 F.3d at 357); United States v. Kelly, 314 F.3d 908, 912 (7th Cir.2003) (upholding a guilty plea "because regulation of real child pornography remains constitutional ... and Mr. Kelly possessed real child pornography"); United States v. Rearden, 349 F.3d 608, 612-14 (9th Cir.2003) (evidence at trial sufficient to prove real children); United States v. Kimler, 335 F.3d 1132, 1142 (10th Cir.2003) (stating that factfinders are “still capable of distinguishing between real and virtual images”); United States v. Hall, 312 F.3d 1250, 1260 (11th Cir. 2002) (affirming a Free Speech Coalition conviction because "no reasonable jmy could have found that the images were virtual children”). But see United States v. Hilton, 386 F.3d 13, 18-19 (1st Cir.2004) (because the jury was not required to find that the images were of actual children, even if a commonsense determination would compel such a finding, the conviction could not stand).
United States v. Martinelli, 62 M.J. 52, 84 — 85 (C.A.A.F.2005)(Crawford, J., dissenting). See also United States v. Destio, 153 Fed.Appx. 888 (3d Cir.2005) (noting that pictures by themselves, observed by the factfinder, are sufficient to find that actual children were involved); Porath v. State, 148 S.W.3d 402, 416 (Tex.App.2004) (when an appellant is charged with a felony possession of child pornography, it is sufficient for the Government to make a presentation of the pictures alone to establish proof beyond a reasonable doubt.).

. United States v. Deaton, 328 F.3d 454, 455 (8th Cir.2003) (reaffirming the reasonableness of a "jury’s conclusion that real children were depicted, even where the images themselves were the only evidence the government presented on the subject”); United States v. Vig, 167 F.3d 443, 449 (8th Cir.1999) (holding that the "images weire viewed by the jury which was in a position to draw its own independent conclusion as to whether real children were depicted”); ...