# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, KRAUSS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JOE SOTELO**
**United States Army, Appellant**

ARMY 20110267

Headquarters, Combined Joint Task Force -101
Michael J. Hargis, Military Judge
Colonel William R. Kern, Staff Judge Advocate

For Appellant: Captain Jack D. Einhorn, JA (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Jack D. Einhorn, JA (on brief).

For Appellee: Captain Bradley M. Endicott, JA (argued); Lieutenant Colonel Amber J. Roach, JA; Major Catherine L. Brantley, JA; Captain Bradley M. Endicott, JA (on brief).

28 November 2012

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

YOB, Senior Judge:

A military judge sitting as a general court–martial convicted appellant, pursuant to his pleas, of wrongfully and knowingly possessing over 250 images and over 40 videos of child pornography, which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the Armed Forces, and of wrongfully and knowingly possessing over 60 images of drawings depicting children performing sexual acts on adults, which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the Armed Forces, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad–conduct discharge, confinement for twelve months, and reduction to the grade of E–1.

Appellant's case is now before this court for review under Article 66, UCMJ. We have considered the record of trial, appellant's assignments of error, the government's response, and the matters discussed during oral argument. Appellant essentially argues that there is a substantial basis in law and fact to question his guilty plea to Specification 2 of The Charge. We agree and order relief in our decretal paragraph.

**FACTS**

As initially drafted, Specification 2 of The Charge alleged the following offense:

> In that Private First Class (E-3) Joe Sotelo, U.S. Army, did, between on or about 1 March 2010 and on or about 9 April 2010, at or near Fort Campbell, Kentucky, wrongfully and knowingly possess over 60 images of drawings depicting children performing sexual acts on adults, over 70 images of partially nude children, and an image that states 'Pedophile: You'd be crazy not to,' or words to that effect, which conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the Armed Forces.

Prior to appellant's guilty plea, the military judge expressed reservations about two clauses contained within Specification 2 of The Charge: the first clause involved 70 images of partially nude children and the second clause concerned the image stating "Pedophile: You'd be crazy not to." Specifically, the military judge believed these two clauses within Specification 2 of The Charge raised "significant due process notice and First Amendment issues." The military judge informed the government that he would not accept appellant's guilty plea to these two clauses of Specification 2 of The Charge. Consequently, the government dismissed "over 70 images of partially nude children, and an image that states 'Pedophile: You'd be crazy not to,' or words to that effect," from Specification 2 of The Charge.

As a result, Specification 2 of The Charge, as modified, simply alleged that appellant possessed "drawings depicting children performing sexual acts on adults." The military judge had the following exchange with the trial counsel regarding the remainder of Specification 2 of The Charge:

> MJ: And I understand that you also indicated in the [Rule for Courts-Martial] 802 session that it was your intent to, in the first clause, 'posses[s] over 60 images of drawings depicting children performing sexual acts on adults' to charge, essentially, a violation of 18 U.S.C. § 1466 A?

2

> TC:  Yes, sir.

During the providence inquiry into Specification 2 of The Charge, the military judge informed appellant that the offense consisted of the following elements:

> First, that at or near Fort Campbell, Kentucky, between on or about 1 March 2010 and 9 April 2010, . . . you knowingly possessed over 60 images of drawings depicting children performing sexual acts on adults;
>
> Second, that at the time you knew you possessed the alleged images;
>
> Third, that your acts were wrongful; and
>
> Fourth, that, under the circumstances, your conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Appellant described to the military judge that he obtained these drawings by using the peer-to-peer file-sharing program Limewire.  Appellant estimated that he possessed between 70 and 90 drawings, and that these drawings depicted "children either exposing themselves in a lewd way and/or performing oral and/or sexual acts on other adults and/or children."  Appellant clarified that sexual acts included oral and vaginal sex.  After confirming that children meant somebody under the age of sixteen, the military judge confirmed that sexual acts included "sexual intercourse, genital to genital sexual intercourse, or oral to genital sexual intercourse."

The military judge next introduced into the discussion that the children depicted in the drawings exposed their genitalia in a lascivious fashion:

> MJ:  In other words, in these cartoons, when these children were exhibiting their genitalia, were they doing that in a manner that would be staged or posed?
>
> Acc:  Yes, sir.
>
> MJ:  Would they be in an unnatural position for a child of that age?
>
> Acc:  Yes, sir.

3

 MJ: Did it appear that the person doing the drawing wanted the viewer's focus to be on the genitalia of that child?

 Acc: Yes, sir.

 MJ: Did it look like the child was . . . indicating a willingness to engage in sexual activity?

 Acc: Yes, sir.

 MJ: Do you believe that those images, those drawings, elicited a sexual response in the viewer?

 Acc: Yes, sir.

 MJ: That was the intent of the person that drew them?

 Acc: Yes, it was, sir.

Thus, appellant concluded that the drawings depicted children under the age of sixteen engaging in sexually explicit conduct either with other children or with adults. The military judge then asked appellant if he thought the drawings were obscene. Appellant agreed that the drawings were obscene "[d]ue to the fact of the exposure and the acts [the children] were engaged in . . . ." Appellant also agreed that the drawings lacked literary, artistic, political, or scientific value. Instead of being artistic renditions, appellant stated that "[t]he sole purpose of these images was to excite a sexual response from the viewer to excite them and have them view these images even more."

At this point in the providence inquiry, the military judge went back to the elements of Specification 2 of The Charge. The military judge did so because he wanted "to be a little more explicit now." The military judge then re-explained the elements of Specification 2 of The Charge as the following:

 That, at or near Fort Campbell, Kentucky, between on or about 1 March 2010 and 9 April 2010, you knowingly possessed over 60 images of drawings of children engaged in sexually explicit conduct;

 That those drawings were obscene;

 That those drawings lacked serious literary, artistic, political, or scientific value; and

4

> That, at the time, you knew you possessed the images;
>
> That your acts were wrongful; and
>
> That, under the circumstances, your conduct was prejudicial to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

After being advised of these elements, appellant confirmed that he possessed the drawings at issue on a laptop computer and hard drive, and that he possessed these drawings at Fort Campbell, Kentucky, between 1 March 2010 and 9 April 2010. Appellant also verified that he knew he was getting these particular drawings because he intentionally sought them out and downloaded them from Limewire. Appellant agreed with the military judge that if the drawings were of real children, they would constitute child pornography. Finally, appellant admitted that his conduct was wrongful, prejudicial to good order and discipline, and service-discrediting.

As part of his pretrial agreement with the convening authority, appellant entered into a stipulation of fact with the government. The following paragraph from the stipulation of fact is pertinent to Specification 2 of The Charge:

> The Accused specifically admits that he did, at or near Fort Campbell, Kentucky, between on or about 1 March 2010 and on or about 9 April 2010, wrongfully and knowingly possess over 60 images of drawings depicting children performing sexual acts on adults . . . . This conduct was prejudicial to good order and discipline or of a nature to bring discredit upon the Armed Forces. These images of drawings included images of children cartoon characters such as 'Dennis the Menace' performing sexual acts with adults. The images also included Japanese anime drawings of naked children and children engaging in explicit sexual conduct. The images graphically depict prepubescent male and female genitalia and conduct that is degrading towards women and children. In addition, many of these cartoons are explicit, sensationalized portrayals of pedophilia. Possessing these images . . . depicting and promoting sexually explicit conduct with children is prejudicial to good order and discipline in that it is conduct which other [s]oldiers view with such disdain that it degrades unit morale when they discover a fellow [s]oldier is viewing it. It is also conduct which brings

5

> discredit upon the Armed Forces because if the general
> public were to discover that a [s]oldier possessed and
> viewed such images, they would think less of [s]oldiers
> and the military.

## LAW

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996) (citing *United States v. Gallegos*, 41 M.J. 446 (C.A.A.F. 1995)). An appellate court will not set aside a guilty plea unless there is "a 'substantial basis' in law and fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

A military judge can abuse his discretion if he accepts appellant's guilty plea based upon "an erroneous view of the law." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A knowing and voluntary plea requires the military judge to explain the elements of an offense to the accused and to elicit the factual basis of the offense. *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) (citations omitted). Failure to do so constitutes reversible error unless "it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Id.* (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)).

Moreover, "[t]he providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538–39, 40 C.M.R. 247, 250–51 (1969)). An accused must understand "the nature of the charges brought against him . . . ." *Id.* (citations omitted). This is due to the fact that "an accused has a right to know to what offense and under what legal theory he or she is pleading guilty." *Id.* An essential aspect of accurately informing appellant of the nature of the offenses "is a correct definition of legal concepts." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

## DISCUSSION

The providence inquiry into Specification 2 of The Charge was deficient because the military judge failed to define the term "obscene" for appellant and failed to elicit facts to demonstrate how the drawings at issue depicted "obscene" material under the appropriate legal standard.

Even though the government did not charge appellant with possessing "obscene" material, the military judge gratuitously advised appellant during the providence inquiry that one of the elements of Specification 2 of The Charge required the drawings to be "obscene."[1] However, the military judge then failed to define the term "obscene" for appellant. In fact, the only discussion of obscenity occurred when the military judge asked appellant if he thought the drawings at issue were obscene. But even this cursory discussion occurred *prior* to the military judge informing appellant that the material must be obscene as a required element.

More importantly, appellant's response as to how the drawings were obscene did not address the guidelines for determining whether material is obscene as set forth in *Miller v. California*, 413 U.S. 15 (1973). In *Miller*, the Supreme Court established the following test to determine whether material is obscene:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest [citations omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24 (internal quotation marks omitted).

While the military judge separately advised appellant of the third prong of the *Miller* test, he failed to advise appellant of the first two prongs of the *Miller* test. Further, the military judge conducted an insufficient inquiry into whether appellant believed the drawings met the first two prongs of the *Miller* test. Nonetheless, appellant's conduct could result in a criminal conviction only if all of the *Miller* requirements are met, which would then remove it from the protections offered by

---

[1] The military judge probably gratuitously added this element because he believed the government "essentially" charged appellant with a violation of 18 U.S.C. § 1466A (2006). In turn, § 1466A(b)(1) criminalizes the possession of obscene drawings depicting minors engaged in sexually explicit conduct. The military judge's view that the government "essentially" charged appellant with violating § 1466A also probably compelled the judge to review the so-called *Dost* factors during the providence inquiry to determine if the drawings at issue depicted the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2) (2006). *See also United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986).

the First Amendment. *See United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009) (acknowledging that federal courts incorporate the *Miller* test "into federal obscenity statutes in order to construe them in a manner consistent with the Constitution."). Thus, we conclude that appellant's cursory and unexplored statement that the drawings were obscene constituted an insufficient factual basis for his guilty plea to Specification 2 of The Charge. *See United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996) (stating that "[m]ere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea.") (citation omitted).

In sum, the military judge advised appellant that the drawings at issue had to be "obscene" in order for them to serve as the basis for a criminal conviction despite the fact that the specification did not allege the drawings to be obscene. As a result, the military judge had an obligation to correctly and completely define the term "obscene" for appellant. The military judge failed to do so; therefore, there are insufficient facts in the record to satisfy the *Miller* guidelines for a showing of obscenity.[2] *See United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003) (finding appellant's plea improvident because "the military judge utilized the pre-[*Ashcroft v.* ] *Free Speech Coalition*[, 535 U.S. 234 (2002)] provisions of 18 U.S.C. § 2256(8) to explain the definition of 'child pornography' to [a]ppellant."); *United States v. Pretlow*, 13 M.J. 85, 88–89 (C.M.A. 1982) (finding appellant's plea improvident because the military judge did not explain "the elements of the substantive offense which was the object of the conspiracy."). Consequently, we will set aside Specification 2 of The Charge in our decretal paragraph.

After setting aside Specification 2 of The Charge, we are convinced that we can perform a sentence reassessment in this case and need not return the case to the convening authority for a sentence rehearing. In making our decision, we consider the principles defined in *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); and *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006), including those specifically discussed in Judge Baker's concurring opinion, *Moffeit*, 63 M.J. at 43

---

[2] We also note that the military judge misadvised appellant with respect to a separate element when he went back and re-explained the elements of Specification 2 of The Charge to him. The military judge informed appellant that a required element consisted of appellant admitting that he knowingly possessed "over 60 images of drawings of children engaged in sexually explicit conduct." However, the government merely charged appellant with possessing drawings "depicting children performing sexual acts on adults." This discrepancy also supports our conclusion that there is a substantial basis in law and fact to question appellant's guilty plea to Specification 2 of The Charge. Again, this confusion probably existed due to the parties' belief that the government "essentially" charged a § 1466A offense.

(Baker, J., concurring in the result). This non-exhaustive list includes the following: (1) whether there are changes in the penalty landscape, including whether charges with significant exposure or aggravating circumstances are taken off the table; (2) whether appellant chose sentencing by members or by military judge alone; (3) the nature of the remaining offense(s); and (4) our identification on the record of the factors that informed our reassessment decision. *Id.*

First, the gravamen of appellant's conduct and the offense with the most aggravating circumstances remains appellant's possession of child pornography. Appellant downloaded child pornography beginning in January 2008 and frequently masturbated to it. Moreover, some of the videos and images containing child pornography involved girls appearing as young as four years old engaging in sexually explicit conduct. Appellant also admitted that "[i]n some of the videos, you can see the children in obvious discomfort and in one you can observe a girl crying after a man is done having intercourse with her." The government almost exclusively focused on appellant's possession of child pornography in fashioning their requested sentence during sentencing arguments. Thus, while the maximum period of confinement has dropped from twenty years to ten years, the sentencing landscape has not significantly changed because the gravamen of appellant's misconduct remains his possession of child pornography, much of which involved prepubescent children. In addition, appellant's sentence of twelve months' confinement was well short of the nineteen-month cap for which he negotiated as part of his pretrial agreement.

Second, appellant chose to be tried and sentenced by a military judge alone. A service court of criminal appeals is "more likely to be certain of what a military judge alone would have done than what a panel of members would have done." *Moffeit*, 63 M.J. at 43 (Baker, J., concurring in the result).

Third, the nature of appellant's remaining offense more readily lends itself to sentence reassessment. *Id.* at 41 (recognizing that the Courts of Criminal Appeals have "reviewed the records of a substantial number of courts-martial involving convictions for child pornography activities . . . and [have] extensive experience with the level of sentences imposed for such offenses under various circumstances."). Indeed, this court routinely reviews findings and sentences related to the possession of graphic child pornography.

Therefore, after applying the *Sales* and *Moffeit* analyses, and after careful consideration of the entire record, we remain confident that the military judge would have adjudged a sentence no less than that approved by the convening authority in this case even absent Specification 2 of The Charge. *Sales*, 22 M.J. at 308.

**CONCLUSION**

The finding of guilty of Specification 2 of The Charge is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the sentencing principles outlined above, the court affirms the sentence as approved by the convening authority.

Judge KRAUSS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court