# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

**Erica J. KROLL**
**Seaman Apprentice (E-2), U.S. Coast Guard**

**CGCMG 0290**
**Docket No. 1372**

**12 February 2014**

General Court-Martial convened by Commander, Eleventh Coast Guard District.  Tried at San Diego, California, on 14-15 March 2012.

| | |
|---|---|
| Military Judge: | CAPT Michael E. Tousley, USCG |
| Trial Counsel: | LT Maya A. Nair, USCGR |
| Assistant Trial Counsel: | LT Sara Senser Petersen, USCG |
| Military Defense Counsel: | LT William L. Geraty, JAGC, USN |
| Appellate Defense Counsel: | CDR Ted R. Fowles, USCG |
| | LT Jonathan C. Perry, USCGR |
| | LT Cara J. Condit, USCG |
| Appellate Government Counsel: | LT Frances S. Johnson-Gillion, USCGR |
| | LT Daniel Velez, USCGR |

**BEFORE**
**McCLELLAND, DUIGNAN & GILL**
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone.  Pursuant to her pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of four specifications of wrongfully using drugs (marijuana, oxymorphone ("Opana"), cocaine, and heroin), two specifications of wrongfully distributing drugs (hydrocodone combination product ("Vicodin") and methamphetamine), one specification of wrongfully using methamphetamine while on duty, and one specification of wrongfully introducing methamphetamine onto a military installation, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ).  The military judge sentenced Appellant to confinement for two years, reduction to E-1, forfeiture of

all pay and allowances, and a bad-conduct discharge. The Convening Authority approved the sentence, but suspended confinement in excess of 12 months, in accordance with the pretrial agreement.

Before this court, Appellant has assigned the following errors:

I.      Appellant was prejudiced by the failure of the Convening Authority to consider substantial clemency matters brought to the Convening Authority's attention prior to action being taken.

II.      The facts elicited during the providence inquiry into Specifications 5 and 9 provided an insufficient basis for the military judge to accept Appellant's guilty pleas.

We specified this issue: Whether Appellant's pleas of guilty to Specifications 2 and 5 were provident, when the military judge informed her, in connection with those specifications, that a controlled substance is one that is illegal to possess, even though the two substances alleged in the specifications apparently have currently accepted medical uses in treatment in the United States.

We find Appellant's pleas provident, with a sufficient factual basis, including her pleas to Specifications 5 and 9 alleging distribution. We discuss the specified issue and the first issue, and affirm.

### "A controlled substance is one that is illegal to possess"

Specification 2 alleges wrongful use of "oxymorphone ('Opana'), a Schedule II controlled substance." Specification 5 alleges wrongful distribution of "hyrdocodone[1] combination product ('Vicodin'), a Schedule III controlled substance."

During the providence inquiry, in the course of discussing the first specification, which alleged use of marijuana, the military judge explained as follows:

> To be punishable under Article 112a[2], use of a controlled substance must be wrongful, that is without legal justification or authorization. Use of a controlled substance is not wrongful if such act or acts are (a) done pursuant to legitimate

---

[1] Assumed to mean hydrocodone.
[2] Per trial counsel's errata sheet at beginning of transcript.

law enforcement activities, for example, an informant who is forced to use drugs as part of an undercover operation to keep from being discovered is not guilty of wrongful use or (b) done by authorized personnel in the performance of medical duties or experiments.  A controlled substance is one that is illegal to possess. Marijuana is a controlled substance under the laws of the United States.

 (R. at 32-33.)

When it came to the second specification, alleging use of Opana, after reciting the elements, the military judge said, "The same definitions that I stated above earlier apply here." (R. at 36.)  He went on, "A controlled substance is one that is illegal to possess.  Opana is a controlled substance under the laws of the United States."  (*Id.*)  When asking Appellant about the facts, he elicited that she obtained the Opana from a civilian friend, that she had no authority to use it, and that her use of it was wrongful.  (R. at 37-38.)

After two more specifications alleging use of illegal drugs, the military judge began discussing the fifth specification, alleging distribution of Vicodin.  After reciting the elements and defining distribution, he explained:

To be punishable under Article 112a[3], distribution of a controlled substance must be wrongful.  Distribution of a controlled substance is wrongful if it is without legal justification or authorization.  Distribution of a controlled substance is not wrongful if such acts or act are: (a) done pursuant to legitimate law enforcement activities, for example, if an informant who delivers drugs is part of an undercover operation is not guilty of wrongful distribution or (b) done by authorized personnel in the performance of medical duties.  A controlled substance is one that it is illegal to possess.  Vicodin is a controlled substance under the laws of the United States.

(R. at 46.)  He elicited from Appellant that a civilian friend gave the Vicodin to her, that she had no authority to distribute it, and that she knew it was wrongful when she distributed it.  (R. at 48.)

The Stipulation of Fact, Prosecution Exhibit 1, includes stipulations that Appellant knew Opana and Vicodin were controlled substances and that their use was wrongful when she used or

---

[3] Per trial counsel's errata sheet at beginning of transcript.

distributed them; that she had no legal justification or authorization for using Opana and for distributing Vicodin; and that she traded the Vicodin pill for a cigarette.

The following provisions of the Controlled Substances Act are relevant to this case:

21 U.S.C. § 812, establishing schedules of controlled substances, and particularly 21 U.S.C. § 812(b), establishing criteria for placing drugs in the schedules;

21 U.S.C. § 811, authorizing regulations adding drugs and substances to the schedules of controlled substances;

21 C.F.R. § 1308.12, Schedule II of controlled substances; and

21 C.F.R. § 1308.13, Schedule III of controlled substances.

We take notice of the following:

That oxymorphone appears on Schedule II, at 21 C.F.R. § 1308.12(b)(1)(xiv).

That hydrocodone combination product is included on Schedule III, at 21 C.F.R. §1308.13(e)(1)(iv).

That substances listed on Schedule II and Schedule III have currently accepted medical uses in treatment in the United States, according to 21 U.S.C. § 812(b)(2)(B) and 21 U.S.C. § 812(b)(3)(B) respectively, in contrast to substances listed on Schedule I, which have no currently accepted medical uses in treatment in the United States, according to 21 U.S.C. § 812(b)(1)(B).

Although the military judge stated that a controlled substance is one that is illegal to possess, clearly that is not true of a Schedule II controlled substance, including Opana, or a Schedule III controlled substance, including Vicodin. It is legal to possess Opana and Vicodin, under limited circumstances. 21 U.S.C. §§ 801-971. Essentially, these controlled substances may be possessed by a licensed practitioner or a person who is registered by the federal government to possess controlled substances, or, apposite here, by a person to whom they have been properly prescribed. 21 U.S.C. § 821(c)(3). A person such as Appellant could be prescribed either of these drugs.

The legal standard for determining whether a guilty plea is provident is whether the record presents a substantial basis in law or fact for questioning it. *United States v. Inabinette*,

66 M.J. 320, 321-22 (C.A.A.F. 2008). To plead providently, an accused must understand how the law relates to the facts. *United States v. Medina,* 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 USCMA 535, 538-39, 40 C.M.R. 247, 250-51 (1969)). Where there is a fine line between permissible and prohibited behavior, the providence inquiry "must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011) (citing *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). Fundamentally, the accused must understand the criminality of his or her conduct. *Id.* at 469.[4]

Concerning the providence of her plea to Specification 2, alleging wrongful use of Opana, one may question how Appellant can be said to have understood the criminality of her conduct after the military judge told her that possession of a controlled substance is illegal, without exception, when that is not the case for the substance she used. His definition of wrongfulness allowed for exceptions only for law enforcement activities and for medical duties or experiments.[5] In light of this definition, Appellant's acknowledgment, in both the Stipulation of Fact and her testimony, that she had no authority to use Opana and that her use of it was wrongful, might not be a fully informed statement. There was no distinction explained to her between permissible and prohibited behavior with respect to Opana. Fortunately for the Government, however, Appellant's admission that she obtained the Opana from a civilian friend, as opposed to a health-care provider, removes the possibility that her conduct could have been lawful. It cannot be said that both permissible and prohibited behaviors were possible within the limits of the facts presented in the Stipulation of Fact and her testimony. Hence there is no substantial basis for questioning the guilty plea.

We reach a similar conclusion with respect to Appellant's plea to Specification 5, alleging wrongful distribution of Vicodin. Again, the military judge's definition of wrongfulness allowed for exceptions only for law enforcement activities and for medical duties. Yet a person to whom Vicodin has been prescribed "may deliver the controlled substance to another person for disposal" if the recipient is authorized to carry out disposal. 21 U.S.C. § 822(g)(1).

---

[4] In both *Hartman* and *O'Connor*, the permissible conduct was constitutionally protected. We believe the principle applies to this case, even if possession or distribution of prescription drugs is not constitutionally protected.
[5] This definition was more appropriate for a Schedule I controlled substance.

However, this scenario was negated when Appellant stipulated that she traded the Vicodin pill for a cigarette. Again, we see no substantial basis for questioning the guilty plea.

**Clemency consideration**

The Staff Judge Advocate's Recommendation (SJAR) for Appellant's case is dated 20 May 2012. It includes the advice, "Before taking your action you must consider the results of trial, my recommendations, and any other matter that defense counsel submits . . . ." An "Acknowledgment of Receipt" signed by Defense Counsel and dated 1 June 2012 reads in pertinent part, "My signature below is my acknowledgement of receipt of the authenticated record of trial and SJAR for the case of United States v. SA Erica J. Kroll. . . . I will submit all clemency matters and assertions of legal error, but request an extension of the 10-day period for doing so and have attached a statement of good cause justifying an extension of 20 additional days . . . ." A memo dated 30 July 2012 from the deputy staff judge advocate for the Eleventh Coast Guard District forwarding the record of trial to Coast Guard Headquarters includes the following in its post-trial chronology:

| Date | Action |
|---|---|
| 04 JUN 2012 | Defense Counsel acknowledges receipt of record and responds via email dtd 04 JUN 2012 with clemency extension request dtd 01 JUN 2012, |
| 11 JUN 2012 | D11 Legal responds to Defense Counsel clemency extension request and grants the extension with a deadline of 20 JUN 2012[6] |
| 19 JUN 2012 | D11 Legal e-mails Defense Counsel requesting update on clemency request.[7] |
| 25 JUN 2012 | Defense Counsel responds to Assistant Trial Counsel via email dtd 25 JUN 2012 requesting a second clemency extension request until 05 JUL 2012. |
| 25 JUN 2012 | D11 Legal grants Defense Counsel a second clemency extension request until 05 JUL 2012 via e-mail dtd 25 JUN 2012. |
| 05 JUL 2012 | Defense counsel submits clemency for SA KROLL. |

---

[6] The memo to this effect is signed by the staff judge advocate. This constitutes an extension of nine days beyond the basic ten days provided by Rule for Courts-Martial 1105(c)(1), Manual for Courts-Martial, United States (2012 ed.). To the extent that the response denied the request for a twenty-day extension, it exceeded the power of the staff judge advocate, according to the rule, which provides that while the convening authority or the staff judge advocate may extend the period, only the convening authority may deny a request for an extension.

[7] This and the next two entries are not reflected in any primary document in the record.

There is no addendum to the SJAR in the record following the clemency submission.  The Convening Authority took action on 16 July 2012.

Appellant argues that because there is no addendum to the SJAR calling attention to Appellant's clemency materials and no other notation verifying that the Convening Authority considered Appellant's materials, we should remand this case for a new SJAR and action.  She cites *United States v. Craig*, 28 M.J. 321, 324-25 (C.M.A.1989), *United States v. Stephens*, 56 M.J. 391, 392 (C.A.A.F. 2002), and several lower court cases of the other services.

In *Craig*, the SJAR called attention to post-trial matters "attached hereto as TAB A for your consideration," but there was no "TAB A" attached, and none of the clemency materials found in the record were marked as "TAB A."  *Craig*, 28 M.J. at 323.  The Court of Appeals observed that "a strong suggestion lies that these materials were not considered by the convening authority."  *Id.* at 324.  In *Stephens*, there was an addendum to the SJAR, which included the clemency materials.  *Stephens*, 56 M.J. at 392.  The Court of Appeals declined to require a convening authority to state what materials had been reviewed.  *Id.*  We do not see these decisions as narrowly prescribing acceptable means of determining whether a convening authority has considered an appellant's submissions.  Attempts by the other service courts to prescribe standard models are enlightening, but do not bind the Coast Guard and cannot be expected to be routinely followed by Coast Guard SJAs.

The Convening Authority in this case, RADM J. R. Castillo, signed the action and the promulgating order, as well as the convening order, referral, and both parts of the pretrial agreement, with a signature beginning with a "J."  A "J" of the same appearance is found in the lower right corner of each page of Appellant's clemency materials.  We are satisfied that the Convening Authority did consider Appellant's materials.[8]

#### Decision

We have reviewed the record in accordance with Article 66, UCMJ.  Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the

---

[8] If there was a memo advising the Convening Authority to initial each page of Appellant's clemency submission, it would have been wise to include it in the record.

entire record, should be approved.  Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges DUIGNAN and GILL concur.



For the Court,


Joseph M. Guyton
Clerk of the Court